**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Joyce Leslie, Inc.<br><br>                     Debtor. | Chapter 11<br><br>Case No. 16-22035 (RDD) |

### ORDER (I)(A) AUTHORIZING ENTRY INTO AGENCY AGREEMENT AS A STALKING HORSE CONTRACT, (B) AUTHORIZING BID PROTECTIONS AND SIGNAGE COSTS REIMBURSEMENT, (C) AUTHORIZING BIDDING PROCEDURES AND AUCTION, AND (D) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[1], since bifurcated to seek separately the relief granted herein, of the debtor and debtor in possession in the above-captioned case (the "**Debtor**"), for an order (this "**Order**"), among other things, (a) authorizing entry into an Agency Agreement, (b) authorizing Bid Protections and Signage Costs Reimbursement, (c) authorizing proposed auction procedures (the "**Bidding Procedures**") and setting the time, date and place of the auction (the "**Auction**"), and (d) approving the form of notice of the Auction and notice of the Store Closing Sales (the "**Auction Notice**") and (ii) setting a hearing (the "**Sale Hearing**"), to be held on February 3, 2016, at 2:00 p.m., to consider the entry of the Approval Order all as more fully set forth in the Motion; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), that venue of this chapter 11 case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409, and that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b) that the Court may decide; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Agency Agreement.

is necessary; and upon the record of the hearing held by the Court on the Motion, as modified, on

January 26, 2016; and there being no objections to the relief granted herein; and, after due

deliberation, this Court having determined that the relief requested in the Motion and granted

herein reflects a proper exercise of the Debtor's business judgment, will encourage bidding on

the Debtor's assets, and is in the best interests of the Debtor, its estate, its creditors and other

parties-in-interest; and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§

157(a)-(b) and 1334(b), and this matter is a core proceeding pursuant to 28 U.S.C. §

157(b)(2)(A), (N) and (0). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    This Order, as it relates only to the Agency Agreement or a possible

Global Transaction (as defined herein), constitutes a final and appealable order within the

meaning of 28 U.S.C. § 158(a) with respect to the approval of the Agency Agreement as a

Stalking Horse Contract and related Bidding Procedures, the Auction Notice and the Cure Notice

and the approval of the Debtor's entry into the Agency Agreement.

C.    Good and sufficient notice of the Bidding Procedures and other related

relief sought pursuant to the Motion has been given to all interested persons and entities,

including, without limitation, (a) all parties provided with notice of the Motion, (b) the Office of

the United States Trustee, (c) the Debtor's twenty (20) largest unsecured creditors, (c) counsel to

---

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

SB Capital, (d) all the Debtor's landlords, (e) all applicable state attorneys general, (f) any

potentially interested parties, (g) parties entitled to notice pursuant to Bankruptcy Rule 2002, and

the Agency Agreement has been reviewed by the recently appointed attorneys for the Creditor's

Committee, which have no objection thereto as a Stalking Horse Contract.

D.      Any remaining objections to the Motion with respect to the relief not

sought pursuant to this Order have been deferred, withdrawn, waived, or settled, and all

reservations of rights included in such objections are preserved to the extent relevant to the Sale

Hearing.

E.      The Debtor has articulated good and sufficient reasons for, and the best

interests of the Debtor will be served by, this Court approving the Agency Agreement as a

Stalking Horse Contract.

F.      The form of the Agency Agreement is approved and is appropriate and

reasonably calculated under the circumstances to enable the Debtor and other parties-in-interest

to easily compare and contrast the differing terms of the bids presented at the Auction and to

encourage bidding on the Assets.

G.      The Bidding Procedures, substantially in the form attached hereto as

Exhibit 1, are fair, reasonable and appropriate under the circumstances and are designed to

maximize the Debtor's recovery with respect to the sale of the Assets, including sale of the

Merchandise and Owned FF&E through the Store Closing Sales or to a Successful Bidder

proposing an Alternative Transaction, including a global bid for all assets on a going concern

basis (a "**Global Transaction**").

H.      The Debtor's proposed Auction Notice, substantially in the form attached hereto as Exhibit 2, is appropriate and reasonably calculated under the circumstances to provide all interested parties with timely and proper notice of the Bidding Procedures, the Auction, the Sale Hearing, and any and all objection deadlines and no other or further notice is required.

I.      The proposed notice substantially in the form attached hereto as Exhibit 3, to be served on counterparties to the Debtor's commercial store leases constituting the Assumed Contracts for purposes of a potential Global Transaction ("**Cure Notice**") is reasonably calculated to provide adequate notice and any proposed assumption and assignment of Assumed Contracts and will provide due and adequate notice of the relief sought in the Motion.

J.      Under the circumstances, timing and procedures set forth herein, in the Motion and in the Agency Agreement, the Debtor has demonstrated compelling and sound business justifications for entry into the Agency Agreement and its terms, including, without limitation, the Bid Protections and the Signage Costs Reimbursement for the Stalking Horse as provided in Section 16 of the Agency Agreement (collectively, the "**Bid Protections and Signage Costs Reimbursement**").

K.      The Bid Protections and Signage Costs Reimbursement: (a) were negotiated by the Debtor and SB Capital as the Stalking Horse, in good faith and at arm's-length, (b) are fair, reasonable and appropriate under the circumstances given, among other things, the size and nature of the transaction and the efforts that have been expended and will continue to be expended by SB Capital as the Stalking Horse, notwithstanding that the proposed Agency Agreement is subject to higher or better offers, and the substantial benefits SB Capital, as the

Stalking Horse has provided to the Debtor, its estate and creditors and all parties in interest herein, including, among other things, by increasing the likelihood that the best possible price for the Merchandise and FF&E will be received and/or a Bid on a global basis can be sought and evaluated, (c) are an actual and necessary cost and expense of preserving the Debtor's estate and (d) are a reasonable inducement for, and a condition of, SB Capital's offer to serve as the Debtor's exclusive agent to conduct the store closing liquidation on the terms set forth in the Agency Agreement, as modified, and compensation for the risks and lost opportunity costs incurred by SB Capital, as the Stalking Horse. The Bid Protections and Signage Costs Reimbursement are commensurate with the real and substantial benefits conferred upon the Debtor's estate by SB Capital, as the Stalking Horse, and constitute actual and necessary costs and expenses incurred by the Debtor in preserving the value of its estate within the meaning of section 503(b) of the Bankruptcy Code.

L.     Entry into the Agency Agreement with SB Capital, as the Stalking Horse, is in the best interests of the Debtor, its estate, creditors, and other parties-in-interest and, based on the information set forth in the Motion and presented to the Court, is an appropriate exercise of the Debtor's business judgment. The Agency Agreement will enable the Debtor to secure an adequate consideration floor for the Auction and will provide a clear benefit to the Debtor's estate and all other parties-in-interest.

M.     The proposed Agency Agreement does not require the appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) of the Bankruptcy Code.

N.      No other or further notice shall be required of the relief sought in the

Motion, as bifurcated.  No finding or ruling is made in this Bidding Procedures Order as to the

adequacy of any proposed transaction, it being intended that such approval will be sought at the

Sale Hearing.

O.      No person or entity, other than SB Capital, as the Stalking Horse, shall be

entitled to any expense reimbursement, break-up fee, "topping," termination or other similar fee

or payment.

Now, therefore,

**IT IS HEREBY ORDERED THAT:**

1.      The procedural relief requested in the Motion is GRANTED to the extent

set forth herein.

2.      The Debtor is authorized to enter into the Agency Agreement and all of its

terms (including the Bid Protections and Signage Costs Reimbursement) and the proposed

transaction with SB Capital, the Bidding Procedures, Auction Notice, setting the time, date and

place of Sale Hearing, are hereby APPROVED, and fully incorporated into this Order, and shall

apply with respect to the proposed Sale.  The Debtor is authorized to take any and all actions

necessary or appropriate to implement the Agency Agreement, to the extent relevant prior to the

Sale Hearing.

3.      The Bidding Procedures attached hereto as Exhibit 1 are approved.  The

Debtor is authorized to conduct an auction in connection with Merchandise, Owned FF&E

and/or a potential Global Transaction pursuant to the Bidding Procedures and this Order.  The

Debtor is authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures.

4.       SB Capital, as the Stalking Horse shall be deemed a Qualified Bidder pursuant to the Bidding Procedures for all purposes with respect to the Merchandise and Owned FF&E and shall be permitted to participate and bid at the Auction.

5.       The Bidding Procedures shall apply to the Qualified Bidders and the conduct of the sale of the Assets and the Auction.

6.       The Bid Protections and Signage Costs Reimbursement as set forth in Section 16 of the Agency Agreement are approved.  The Bid Protections and Signage Costs Reimbursement shall have administrative expense status pursuant to section 507 of the Bankruptcy Code and shall be secured by a lien (which shall be deemed properly perfected without the need for further filings or documentation) on the Agent Collateral and any Deposit (each as defined in the Agency Agreement) in accordance with the terms of (and with the priority set forth in) Section 16.11(d) of the Agency Agreement.

7.       The Auction Notice, substantially in the form attached hereto as Exhibit 2, shall be deemed good and sufficient notice of the Bidding Procedures and any related Auction, the Sale Hearing and the associated objection periods, and is reasonably calculated to provide notice to any affected party and afford the affected party the opportunity to exercise any rights affected by the Motion as it relates to the Auction and Sale Hearing.

8.       The Cure Notice, substantially in the form attached hereto as Exhibit 3 to be served on counterparties to Assumed Contracts ("**Cure Notice**") is reasonably calculated to

provide adequate notice concerning the proposed sale of the Assets and any proposed assumption

and assignment of Assumed Contracts and will provide due and adequate notice of the relief

sought in the Motion.

9.    Within one (1) business day after entry of this Order, the Debtor shall

serve the Auction Notice upon all Notice Parties.

10.    Within one (1) business day after entry of this Order, the Debtor shall file

and serve the Cure Notice to the counterparties to any Assumed Contracts.  Counterparties to the

Assumed Contracts[3] (each a "**Counterparty**," and together, the "**Counterparties**"), subject to

any Counterparty's right to object to adequate assurance for future performance under section

365 of the Bankruptcy Code at a later time in the event a Global Transaction Bid is not received

at the Auction, based upon the Court's consideration of the Select Asset Purchase Agreement

with Madrag or other bids on store leases at a subsequent hearing, to be scheduled upon

additional notice to creditors and other Notice Parties, must file and serve any objection to the

assumption and assignment of any Assumed Contract, including objections to any Cure Cost, so

that such objections are received by the anticipated closing date of **February 4, 2016 at 5:00**

**p.m.**  In the interest of clarity, the Debtor reserves the right to utilize the Sale Hearing on

February 3, 2016, at 2:00 p.m. as a date to consider assumption and assignment of all store leases

pursuant to a Global Transaction upon additional notice to the Counterparties, whereupon any

objection based upon adequate assurance of future performance under section 365 of the

---

[3] The inclusion of any agreement as an Assumed Contract does not constitute an admission by the Debtor
that such agreement actually constitutes an executory contract or unexpired lease under the Bankruptcy
Code, and the Debtor expressly reserves the right to challenge the status of any agreement included as an
Assumed Contract.

Bankruptcy Code may be <u>filed and served (with a copy to the Court's chambers) so as to be</u> <u>received at or prior to the Sale Hearing</u>.  Additionally, in the event of Global Transaction Bid, the bidder shall deliver adequate assurance of future performance information and financials to the Counterparties no later Friday January 29, 2016 at 12:00 noon.

11.    In the event that an objection to any Cure Cost is timely filed by a Counterparty, such Counterparty's objection must set forth (i) the basis for the objection, (ii) with specificity, the amount the party asserts as the Cure Cost, and (iii) appropriate documentation in support of the alleged alternative Cure Cost.  In the event that the Debtor and the Counterparty cannot consensually resolve the Counterparty's objection to the Cure Cost, the Successful Bidder or any other assignee will segregate any disputed cure amounts pending the resolution of any such disputes by this Court or mutual agreement of the parties.

12.    <u>Any Counterparty failing to timely file an objection to the Cure Cost set</u> <u>forth in the Cure Notice shall be forever barred from objecting to the Cure Costs and from</u> <u>asserting any additional cure or other amounts against the Debtor, its estate, and the Successful</u> <u>Bidder with respect to the Assumed Contract to which it is a Counterparty</u>.  For the avoidance of doubt, no executory contract or unexpired lease will be assumed or assumed and assigned until and unless a transaction closes that proposes assumption and assignment of such executory contract and/or unexpired lease.

13.    All other objections to approval of a particular transaction, including the Sale of any applicable Assets free and clear of liens, claims and encumbrances and the Approval Order must be in writing, state the basis of such objection with specificity and be filed with this

Court in compliance with the Bankruptcy Rules and the Local Rules and served (with a copy to

the Court's chambers) so as to be received by the Bid and Objection Notice Parties (as such term

is defined in the "Auction Notice" attached hereto as Exhibit "2") on or before **5:00 p.m.**

**(Eastern Standard Time) on February 2, 2016**.

        14.     Except as otherwise provided in the Agency Agreement, the Bidding

Procedures or this Order, the Debtor may, in consultation with the Creditor's Committee, as they

may reasonably determine to be in the best interests of the Debtor, its estate, its creditors, and

other parties-in-interest:  (a) determine which bidders are Qualified Bidders, (b) determine which

bids are Qualified Bids, (c) determine which Qualified Bid is the Successful Bid, (d) reject any

bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the

Bidding Procedures or the Bankruptcy Code, or (iii) contrary to the best interests of the Debtor

or its estate, (d) remove any material Assets from the Auction, (e) waive terms and conditions set

forth herein with respect to all potential bidders, (f) impose additional terms and conditions with

respect to all potential bidders, (g) extend the deadlines set forth herein, (h) adjourn or cancel the

Auction and/or Sale Hearing in open Court without further notice, (i) modify the Bidding

Procedures, (j) withdraw the Motion at any time with or without prejudice, or (k) take such other

action to accommodate a potential Global Transaction.  Solely with respect to bids to acquire the

Assets subject to the Agency Agreement, the Debtor may not waive without the consent of the

Stalking Horse (A) the Minimum Overbid (as defined in the Bidding Procedures), (B) the

requirement that all (i) Inventory Overbids, (ii) All Assets Overbids, (iii) a Global Transaction

Bid, (iv) Successful Bids and (v) credit bids accepted by the Debtor as a Qualified Bid (each as

defined in the Bidding Procedures) agree to (x) payment of the Signage Costs Reimbursement

(as defined in the Agency Agreement) (either through direct reimbursement to the Stalking

Horse and/or assumption of obligation and payment to the vendor(s)), and (C) the requirement

that any credit bid accepted by the Debtor as a Qualified Bid must provide for the payment in

cash of the Stalking Horse's Bid Protections and Signage Costs Reimbursement (each such term

is defined in the Agency Agreement).

15.     If no Qualified Bid other than the Qualified Bid submitted by SB Capital,

as the Stalking Horse is received by the Bid Deadline, the Auction will not be held and the

Debtor shall promptly seek this Court's approval of the Agency Agreement with the Stalking

Horse at the Sale Hearing after providing notice thereof to applicable Notice Parties.

16.     Each Qualified Bidder participating at the Auction will be required to

confirm that it has not engaged in any collusion with respect to the bidding of Assets.

17.     Bidding at the Auction shall be transcribed.

18.     Only Qualified Bidders, as determined by the Debtor and the Creditor's

Committee, will be permitted to submit bids at the Auction.

19.     The Sale Hearing will be held in this Court on **February 3, 2016 at 2:00**

**p.m. (Eastern Standard Time)**.  The Sale Hearing may be adjourned or rescheduled by the

Debtor, with the consent of SB Capital, as the Stalking Horse, without further notice by an

announcement of the adjourned date at the Sale Hearing or by the filing of a hearing agenda.

20.     All Qualified Bidders at the Auction shall be deemed to have consented to

the core jurisdiction of this Court and waived any right to jury trial in connection with any

disputes relating to the Auction, the transaction involving the sale of Assets and the construction and enforcement of the Agency Agreement.

21.     In the event there is a conflict between this Order and the Motion or the Agency Agreement, this Order shall govern and control.

22.     The Debtor is hereby authorized to take such steps and incur such expenses as may be reasonably necessary or appropriate to effectuate the terms of this Order.

23.     The provisions of this Order, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan(s) or reorganization or liquidation of the Debtor or converting the Debtor's case from chapter 11 to chapter 7, and the rights and interests granted pursuant to this Order, shall continue in these or any superseding cases and shall be binding upon the Debtor and its successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed in this case shall be and hereby is authorized to perform under this Order upon the appointment of such trustee without the need for further order of this Court.

24.     Notwithstanding any applicability of Bankruptcy Rules 6004 and 6006 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, for cause.

25.     SB Capital's right to receive payment of the Bid Protections and Signage Costs Reimbursement as provided in Section 16.11 of the Agency Agreement shall be the sole

and exclusive remedy of the Stalking Horse in the event of termination of the Agency

Agreement.

26.     The Pre-petition liquidation and Consulting Agreement with SB Capital

for the five (5) stores already subject to imminent closure is assumed and approved.

27.     This Court retains jurisdiction with respect to all matters arising from or

related to the implementation of this Order, including, but not limited to, any matter, claim or

dispute arising from or relating to the Bid Protections and Signage Costs Reimbursement or the

Agency Agreement.

Dated:  White Plains, New York
        January 27, 2016

                                        ____/s/Robert D. Drain_____
                                        ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1

**Bidding Procedures**

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "**Bidding Procedures**") to be employed with respect to the sale (the "**Sale**") of the following classes of assets (each, an "**Asset Class**" and collectively, the "**Assets**") of Joyce Leslie, Inc., debtor and debtor-in-possession (the "**Debtor**") in connection with its chapter 11 case pending in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), case number 16-22035 (RDD) consisting of either: (i) all merchandise, inventory, furniture, fixtures and equipment ("**Owned FF&E**"), or (ii) a Global Transaction on a going concern type basis covering all merchandise, inventory and Owned FF&E, together with assumption and assignment of all store leases and all intellectual property. For the avoidance of doubt, the Debtor may solicit, and shall be entitled to consider and accept, bids for all of the Assets as part of a Global Transaction.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS UNDER A GLOBAL TRANSACTION OR TO COMPETE AGAINST SB CAPITAL TO CONDUCT STORE CLOSING SALES BASED UPON PURCHASE OF MERCHANDISE, INVENTORY AND OWNED FF&E SHOULD CONTACT THE FOLLOWING PERSONS:**

Joyce Leslie, Inc.
170 West Commercial Avenue
Moonachie, New Jersey 07074
Attn: Lee Diercks
(908) 431-2122
ldiercks@clearthinkinggrp.com

with a copy to:

Kevin J. Nash, Esq.
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, New York 10036
(212) 221-5700
knash@gwfglaw.com

### A.    Sale

The Debtor seeks to sell inventory and merchandise, Owned FF&E in connection with store liquidation sales or all assets in a Global Transaction, pursuant to the Bidding Procedures as set forth herein.

### B.    Agency Agreement

With respect to the Debtor's inventory and merchandise (the "**Merchandise**") and furniture, fixtures and equipment ("**Owned FF&E**"), the Debtor and a contractual joint venture comprised of SB Capital Group, LLC, Tiger Capital Group, LLC, and 360 Merchant Solutions, LLC (collectively, the "**Stalking Horse**") have entered into that certain Agency Agreement, dated as of January 14, 2016 (the "**Agency Agreement**"), attached hereto as Exhibit 1, pursuant

1

to which the Stalking Horse will, among other things, acquire the Merchandise and conduct chain-wide store closing sales (the "**Store Closing Sales**"), as well as act as the Debtor's exclusive agent to sell Owned FF&E at the Debtor's stores and  corporate offices.

In all instances (whether it be on a global basis or in connection with store liquidations) the Sale is on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtor, its agents or estates, except to the extent set forth in the Agency Agreement and as approved by the Bankruptcy Court.

Further, except as otherwise provided in the Agency Agreement and as approved by the Bankruptcy Court, all of the Debtor's right, title and interest in and to the relevant leases (global or otherwise) will be sold free and clear of all liens, claims, interests and encumbrances thereon to the maximum extent permitted by section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "**Bankruptcy Code**"), with such liens, if any, to attach to the net proceeds of the Sale with the same validity and priority as such liens had against the Assets. Notwithstanding the foregoing, the Debtor no longer has any secured debt encumbering any of its assets.

The ability to undertake and consummate the Sale pursuant to the Agency Agreement shall be subject to competitive bidding as set forth herein and approval by the Bankruptcy Court.  The Debtor may consider bids for all or a portion of the Assets in a single bid from a single bidder, or multiple bids from multiple bidders, including bids on a Global Transaction.

## C.    The Bidding Procedures

### 1. *Provisions Governing Qualifications of Bidders*

Unless otherwise ordered by the Bankruptcy Court, prior to **5:00 p.m. prevailing Eastern time on February 1, 2016** (the "**Bid Deadline**"), each entity, other than the Stalking Horse, that wishes to participate in the bidding process (a "**Potential Bidder**") must deliver the following to the Notice Parties (defined below):

(a)    a written disclosure of the identity of each entity, including involvement in any joint venture, that will be bidding (or participating in a bid) on the Assets or certain Asset Classes;

(b)    to the extent a Bid on a Global Transaction is involved, adequate assurance information, including (a) adequate information (in the Debtor's reasonable business judgment) about the financial condition of the Potential Bidder, such as federal tax returns for the previous two years, a current financial statement, and/or current bank account statements; and (ii) information demonstrating (in the Debtor's reasonable business judgment) that the Potential Bidder has the financial capacity to, inter alia, consummate the proposed assumption and assignment of Assumed Contracts;

(c)     to the extent relevant, an executed confidentiality agreement in form and substance satisfactory to the Debtor; and

(d)     a *bona fide* non-binding letter of intent or expression of interest with respect to a purchase of the Inventory, Owned FF&E or other assets in a Global Transaction, which shall describe, among other things, the cash, financing commitments, or other sources of consideration that the Potential Bidder will use to consummate the proposed transaction, and any conditions to consummating the proposed transaction including any required internal approvals, syndication requirements, or other contingencies or approvals.

As soon as reasonably practicable after the Debtor receives a bid relating to either the Merchandise or Owned FF&E or a Global Transaction, the Debtor shall distribute a copy of such bid to counsel to SB Capital, as the Stalking Horse by e-mail.

A Potential Bidder that the Debtor determines in its reasonable business judgment, after consultation with any official committee of unsecured creditors appointed in this chapter 11 case (the "**Committee**") is likely (based on availability of financing, experience and other considerations) to be able to consummate the sale, will be deemed a "**Qualified Bidder**." The Debtor will provide access to due diligence only to those parties it believes, in the exercise of its reasonable business judgment are pursuing a proposed transaction in good faith.

As promptly as practicable after a Potential Bidder delivers the materials required above, the Debtor, in consultation with the Committee, will make its determination and notify the Potential Bidder if such Potential Bidder is a Qualified Bidder.

## 2.  *Due Diligence*

The Debtor will afford any Qualified Bidder such due diligence access or additional information as the Debtor deem appropriate, in its reasonable discretion.  Any due diligence materials provided to any bidder shall be made available to bidders and SB Capital, as the Stalking Horse in the data room, subject to such protections as the Debtor determines in its reasonable business judgment.

The due diligence period will extend through and including the Bid Deadline; *provided, however*, that any Qualified Bid (defined below) submitted will be irrevocable until the selection of the Successful Bidder (defined below) and the Back-Up Bidder (defined below) as described herein.

## 3.  *Provisions Governing Qualified Bids*

A bid will be considered a qualified bid only if the bid is submitted by a Qualified Bidder and complies with all of the following (a "**Qualified Bid**") as determined by the Debtor in its business judgment, in consultation with the Committee:

(a)     states with specificity the type of assets (including a Global Transaction) such Qualified Bidder offers to purchase, in cash, (which shall consist of

at least the assets described in the non-binding letter of intent submitted by such Qualified Bidder) and the liabilities and obligations to be assumed by the Qualified Bidder upon the terms and conditions set forth in an agreement, and to the extent relevant, based on the form of Agency Agreement submitted by the Stalking Horse, as modified to reflect such Qualified Bidder's proposed transaction or in an asset purchase agreement (an "**Alternative Transaction Agreement**");

(b)     disclose any connection or agreements with the Debtor, SB Capital, as the Stalking Horse, any other known Potential Bidder and/or any officer, director or equity security holder of Joyce Leslie, Inc..;

(c)     includes a signed writing that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder and the Back-Up Bidder; *provided that* if such Qualified Bidder is selected as the Successful Bidder or Back-Up Bidder, its offer will remain irrevocable until the date that is three business days after the commencement of the Store Closing Sales or, if a Global Transaction Bid is the Successful Bid, until the closing of the Sale;

(d)     contains written confirmation that there are no conditions precedent to the Qualified Bidder's ability to enter into a definitive agreement, including, but not limited to, any additional due diligence, inventory evaluation or financing conditions, and that all necessary approvals have been obtained prior to the date of submission of the bid;

(e)     includes evidence, in form and substance reasonably satisfactory to the Debtor, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Agency Agreement or Alternative Transaction Agreement;

(f)     includes a duly authorized and executed copy of the Agency Agreement or Alternative Transaction Agreement (including all exhibits and schedules thereto), together with copies marked to show any amendments and modifications to (a) the Agency Agreement and (b) the proposed Approval Order;

(g)     includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the Sale, that will allow the Debtor to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the Sale;

(h)     includes an acknowledgement and representation that the Qualified Bidder: (a) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (b) has relied solely upon its own independent review, investigation and/or inspection of

4

any documents and/or the relevant assets; (c) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, regarding the relevant assets or the completeness of any information provided except as expressly stated in the Agency Agreement or Alternative Transaction Agreement; and (d) is not entitled to any expense reimbursement, break-up fee or similar type of payment in connection with its bid;

(i)     is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Debtor), certified check or such other form acceptable to the Debtor, in an amount equal to ten percent of the value of such Qualified Bidder's Qualified Bid (as quantified by the Debtor) (the "**Deposit**"), except with respect to a Global Transaction Bid, such higher amount as required by the Debtor and the Committee;

(j)     is accompanied by a letter (a) stating with specificity the type of assets such Qualified Bidder wishes to bid on and the liabilities and obligations to be assumed by such Qualified Bidder, (b) specifying all material terms of the bid that are substantially the same as or better than those of the Stalking Horse bid, to the extent the bid is on the same set of assets as the Stalking Horse bid, (c) stating that its offer is a *bona fide* offer that it intends to consummate if it is selected as the Successful Bidder and (d) stating that such Qualified Bidder has not engaged in any collusion with respect to the bidding process;

(k)     contains such other information as is requested by the Debtor in its business judgment; and

(l)     is received prior to the Bid Deadline.

The Debtor will notify all Qualified Bidders by the start of the Auction as to whether or not *any* bids constitute Qualified Bids with respect to any of the assets and whether *such* Qualified Bidder's bid constitutes a Qualified Bid.  The Debtor retains the right, upon consultation with the Committee, to waive or modify the terms of the Bidding Procedures when determining which bids (other than the Agency Agreement, which shall constitute a Qualified Bid) may be deemed Qualified Bids.  As soon as reasonably practicable after the Debtor determine that a bid is a Qualified Bid, the Debtor shall distribute a copy of such bid to counsel to the Stalking Horse as soon as practical.

SB Capital, as the Stalking Horse shall be deemed a Qualified Bidder for all purposes with respect to any assets proposed to be acquired by the Stalking Horse bid and shall not be required to comply with the requirements in Section C.3 hereof (including, without limitation, the requirement of delivery of a Deposit).

### 4.  *Bid Deadline*

A Qualified Bidder that desires to make a bid must deliver written copies of its bid to the following parties (collectively, the "**Notice Parties**") so as to be received not later than

the Bid Deadline of **5:00 p.m. prevailing Eastern time on February 1, 2016**:  (a) the proposed counsel to the Debtor,  Goldberg Weprin, Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, New York 10036, Attn: Kevin J. Nash; (b) counsel for the Official Committee of Unsecured Creditors, Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036, Attn: Jay R. Indyke and Seth Van Aalten (c) the U.S. Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Susan Golden; and (d) counsel to SB Capital,  DiConza Traurig Kadish LLP, 630 Third Avenue, 7th Floor, New York, New York 10017, Attn: Maura Russell.

The Bid Deadline may be extended by the Debtor in consultation with the Stalking Horse and each of the Notice Parties.

### 5. *Evaluation of Competing Bids*

A Qualified Bid will be valued based upon several factors as determined by the Debtor in its business judgment including, without limitation: (a) the amount of such bid; (b) the assets included in such bid, (c) the risks and timing associated with consummating such bid; (d) any proposed revisions from the Agency Agreement and/or the Approval Order; and (e) any other factors deemed relevant by the Debtor in its reasonable business judgment, upon consultation with the Committee.

### 6. *No Auction if No Qualified Bids*

If the Debtor receives no more than one Qualified Bid (including the Stalking Horse bid) on each asset, the Debtor may not hold the Auction and may request at the Sale Hearing (defined below) that the Bankruptcy Court approve the Agency Agreement with the Stalking Horse.

### 7. *Auction Process*

If the Debtor receives more than one Qualified Bid for the Assets or any Asset Class (including the Stalking Horse bid), the Debtor will conduct an auction, which will be transcribed, at **11:00 a.m. prevailing Eastern Time on February 2, 2016** (the "**Auction**") at the offices of the Debtor's proposed counsel, Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, New York 10036, or such other location as will be timely communicated to all entities entitled to attend the Auction.  The Auction will be conducted in accordance with the following procedures:

(a)     Only the Debtor, the Committee, any Qualified Bidder that submitted a Qualified Bid, the advisors to each of the foregoing, and any interested landlords or creditors will be entitled to attend the Auction, and only the Qualified Bidders will be entitled to make any bids at the Auction.

(b)     Each Qualified Bidder will be required to confirm that it has not engaged in any collusion with respect to the bidding at the Auction.

(c)     Prior to the Auction, each Qualified Bidder that timely submitted a Qualified Bid must inform the Debtor whether it intends to attend the

Auction; *provided that* in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid nevertheless will remain fully enforceable until the date of the selection of the Successful Bidder and the Back-Up Bidder.

(d)   Prior to the Auction, the Debtor, in its reasonable discretion, after consultation with the Committee, will determine which Qualified Bid(s) are the highest or otherwise best Qualified Bid(s) for (x) the Assets (the "**Highest or Best Asset Bid**"), and/or (y) each Asset Class (each highest or best Qualified Bid for an Asset Class, the "**Highest or Best Asset Class Bid**") and will provide copies of the Highest or Best Asset Bid and/or the Highest or Best Asset Class Bid to the other Qualified Bidders.

(e)   For the Asset Classes of Merchandise and Owned FF&E, to the extent that there is more than one Qualified Bid for such assets, all initial overbids beyond the Stalking Horse bid (i) must exceed the Stalking Horse bid by an amount at least equal to one percent (1%) of the Cost Value (as defined in the Agency Agreement) of the Merchandise (as determined by Debtor in its reasonable discretion) plus cash in the amount of the Bid Protections Break-Up Fee and the Cash Expense Reimbursement  (each as defined in the Agency Agreement) (as quantified by the Debtor) (the "**Minimum Overbid**", projected to be at least $105,000) and (ii) agree to payment of the Signage Costs Reimbursement (as defined in the Agency Agreement) (either through direct reimbursement to the Stalking Horse and/or assumption of obligation and payment to the vendor(s)). Bidding at the Auction will continue in increments of at least 0.10% (each successive bid, an "**Inventory Overbid**").  An Inventory Overbid shall remain open and binding on the Qualified Bidder(s) in accordance with its terms until and unless the Debtor accept an alternate Qualified Bid as the Highest or Best Asset Bid for Merchandise and Owned FF&E (or for a group of assets). During the course of the Auction, the Debtor shall, after submission of each Inventory Overbid, promptly inform each participant which Inventory Overbid reflects, in the Debtor's view, the highest or otherwise best offer.

(f)   Before bidding on Merchandise and Owned FF&E pursuant to the Agency Agreement, and to the extent that there is at least one Qualified Bid for a Global Transaction, the Auction shall commence with bidding on such Global Transaction to continue in increments of at least $100,000, or such other amount as determined by the Debtor in its business judgment (each successive bid, a "**Global Transaction Overbid**").  A Global Transaction Overbid shall remain open and binding on the Qualified Bidder(s) until and unless the Debtor accepts an alternate Qualified Bid as the Highest or Best Bid on Merchandise and Owned FF&E. During the course of the Auction, the Debtor shall, after submission of each Global Transaction Overbid, promptly inform each participant which bids reflect, in the Debtor's view, the highest or otherwise best offer for assets. When

7

bidding on individual Asset Classes of Merchandise and Owned FF&E for which more than one Qualified Bid was received concludes, the Debtor, after consultation with the Committee, shall determine a highest or otherwise best bid with respect to each Asset Class (each highest or best bid after conclusion of the auction, the "**Winning Asset Class Bid**").  In all events, the Debtor shall not be required to accept any bids made with respect to a Global Transaction that are not subject to the Agency Agreement.

(g)     If there is a Highest or Best Global Transaction Bid, the Debtor shall hold an auction for the individual Assets, excluding store leases. A bidder seeing to purchase the relevant assets subject to the Agency Agreement as part of a Global Transaction Overbid must agree to the payment of the Signage Costs Reimbursement (either through direct reimbursement to the Stalking Horse and/or assumption of obligation and payment to the vendor(s)).  A Global Transaction Overbid shall remain open and binding on the Qualified Bidder(s) until and unless the Debtor accepts an alternate Qualified Bid(s) as the Highest or Best Asset Bid.  During the course of the Auction, the Debtor shall, after submission of each Global Transaction Overbid, promptly inform each participant, which Global Transaction Overbid reflects, in the Debtor's view, the highest or otherwise best offer.

(h)     The Debtor, after consultation with the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction; *provided that* such rules are (a) not inconsistent with these Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in these cases and (b) disclosed to each Qualified Bidder at or prior to the Auction.

(i)     Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by the Global Transaction Overbid, the Debtor will give effect to any additional costs to be assumed by a Qualified Bidder and any additional costs or risks which may be imposed on the Debtor by any such Asset Class Overbid and/or All Assets Overbid.

All Qualified Bidders at the Auction and the Stalking Horse shall be deemed to have consented and submitted to the core jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the marketing or solicitation process, the Auction and the construction and enforcement of the Qualified Bidder's contemplated transaction documents, as applicable.

**8.   *Selection of Successful Bid***

At or prior to the conclusion of the Auction, the Debtor, in consultation with the Committee, will review and evaluate each Qualified Bid in accordance with these Bidding Procedures and determine in its reasonable business judgment which offer is the highest or otherwise best offer from among the Qualified Bids for the Assets or for each of the asset classes

submitted at the Auction (each, a "**Successful Bid**" and the bidder(s) making such bid, the "**Successful Bidder**"), and communicate to the other Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bids.  A Successful Bid must include an agreement to payment of the Signage Costs Reimbursement (either through direct reimbursement to the Stalking Horse and/or assumption of obligation and payment to the vendor(s)).  The determination of the Successful Bids by the Debtor at the conclusion of the Auction will be final, subject only to approval by the Bankruptcy Court.

As soon as reasonably practicable after conclusion of the Auction, (a) the Successful Bidder will complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions of the Successful Bids and (b) the Debtor will file a notice with the Bankruptcy Court identifying the Successful Bidder and the Successful Bids, which will include copies of the Agency Agreement or applicable Alternative Transaction Agreements and the proposed form of Approval Order, in each case in the forms agreed to between the Debtor and the Successful Bidder marked to show all amendments and modifications made to the Agency Agreement submitted by the Stalking Horse (the "**Successful Bidder Agreement**") and proposed Approval Order attached to the Motion.

The Debtor will sell the Assets to the Successful Bidder(s) pursuant to the terms of the Successful Bid(s) as set forth in each Successful Bidder Agreement if and as approved by the Bankruptcy Court at the Sale Hearing.  The presentation of a particular Qualified Bid to the Bankruptcy Court as a Successful Bid for approval does not constitute the Debtor's acceptance of the Qualified Bid.  The Debtor will be deemed to have accepted a Qualified Bid as a Successful Bid only after such bid has been approved by the Bankruptcy Court.

### 9.  *Return of Deposits*

All Deposits will be returned to each Qualified Bidder not selected by the Debtor as the Successful Bidder or the Back-Up Bidder no later than three business days after the commencement of the Store Closing Sales or, if a going-concern bid is the Successful Bid, until the closing of the Sale.

### 10. *Forfeit of Deposits*

A Successful Bidder that breaches any of its obligations under the applicable Successful Bidder Agreement shall forfeit its Deposit, which shall become property of the Debtor's estates without any further order of the Bankruptcy Court.  The forfeiture of the Deposit shall be in addition to any other rights, claims and remedies that the Debtor and its estate may have against such Successful Bidder.

### 11. *Back-Up Bidder*

If an Auction is conducted, the Qualified Bidder(s) with the second highest or otherwise best Qualified Bid at the Auction for the applicable assets, as determined by the Debtor in the exercise of its business judgment, will be required to serve as a back-up bidder (a "**Back-Up Bidder**") and keep such bid open and irrevocable until the date that is three business days after the commencement of the Store Closing Sales; provided that the Stalking Horse shall be required to serve as Back-Up Bidder only subject to the terms and conditions set forth in its

bid (including, without limitation, any outside dates, milestones or termination events). Following the Sale Hearing, if the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of such Successful Bidder, the applicable Back-Up Bidder will be deemed to be the new Successful Bidder for the applicable assets, and the Debtor will be authorized but not required, to consummate the Sale with such Back-Up Bidder without further order of the Bankruptcy Court.  The Back-Up Bidder other than SB Capital shall be required to close within three (3) business days following receipt of notice from the Debtor of the Successful Bidder's failure to close.

**D.    The Sale Hearing**

The Debtor will seek entry of the Approval Order from the Bankruptcy Court at a hearing (the "**Sale Hearing**") on February 3, 2016, at 2:00 p.m., to request the Bankruptcy Court approve and authorize the Sale on terms and conditions determined in accordance with these Bidding Procedures, the Auction and the executed form of Successful Bidder Agreement.

.

# **EXHIBIT 2**

**Auction Notice**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOYCE LESLIE, INC., | ) | Case No. 16-22035 (RDD) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

## AUCTION NOTICE

      **PLEASE TAKE NOTICE** that Joyce Leslie, Inc., Inc.,  as Debtor and Debtor in possession in the above-captioned case (the "**Debtor**"), on January 14, 2016, filed a motion (the "**Motion**")[1], subsequently bifurcated, for among other things, entry of an order (the "**Bidding Procedures Order**"), (i) authorizing entry into Agency Agreement, (ii) authorizing Bid Protections and Signage Costs Reimbursement (iii) authorizing proposed auction procedures (the "**Bidding Procedures**") relating to a sale of Merchandise and Owned FF&E in connection with Store Closing Sales or a Global Transaction involving a sale of all assets as a going concern, and setting the time, date and place of the auction (the "**Auction**") and (iv) approving the form of notice of the Auction and notice of the Store Closing Sales (the "**Auction Notice**") and (v) setting a hearing (the "**Sale Hearing**"), to be held on February 3, 2016, at 2:00 p.m., to consider the entry of the Approval Order.

      **PLEASE TAKE FURTHER NOTICE** that, on January 26, 2016 the Court entered an Order (the "**Bidding Procedures Order**") approving, among other things, the Bidding Procedures, attached to the Bidding Procedures Order as <u>Exhibit 1</u>, which Bidding Procedures Order governs selection of one or more Successful Bidders at the Auction to be held as described below.

      **PLEASE TAKE FURTHER NOTICE** that the Motion includes a sale of all inventory, furniture, fixtures and equipment, and intellectual property in the stores or other closing locations, real property leases and customer lists in connection with what is described as a "Global Transaction" free and clear of all Liens, claims, interests and Liens pursuant to section 363 of the Bankruptcy Code.

      **PLEASE TAKE FURTHER NOTICE** that any bidder that desires to make a bid in the Auction must deliver written copies of its bid to the Bid and Objection Notice Parties (defined below) so as to be received not later than **5:00 p.m. prevailing Eastern time on February 1, 2016** (the "**Bid Deadline**").

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

       **PLEASE TAKE FURTHER NOTICE** that the Auction will be held at **11:00 a.m. prevailing Eastern Time on February 2, 2016** at the offices of the Debtor's proposed counsel, Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, New York 10036, or such other location as the parties may agree upon, pursuant to additional notice to be provided.

       **PLEASE TAKE FURTHER NOTICE** that a hearing to consider, among other things, approval of the Auction results including approval of the Agency Agreement or an Alternative Transaction Agreement with the party or parties submitting the highest or otherwise best bid at the Auction, will be held at **2:00 p.m. prevailing Eastern Time on February 3, 2016** before The Honorable Robert D. Drain, United States Bankruptcy Judge, in Courtroom 118, 300 Quarropas Street, White Plains, New York 10601, or as soon thereafter as the Debtor may be heard (the "**Sale Hearing**").  The Sale Hearing may be adjourned or rescheduled by the Debtor, with the consent of the Stalking Horse, without further notice by an announcement of the adjourned date at the Sale Hearing or by the filing of a hearing agenda.

       **PLEASE TAKE FURTHER NOTICE** that objections to the proposed approval of the sale must be in writing, conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court, and be filed with the Bankruptcy Court and served upon the "**Bid and Objection Notice Parties**": (a) the proposed counsel to the Debtor,  Goldberg Weprin, Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, New York 10036, Attn: Kevin J. Nash; (b) counsel for the Official Committee of Unsecured Creditors, Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036, Attn: Jay R. Indyke and Seth Van Aalten (c) the U.S. Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Susan Golden; and (d) counsel to SB Capital,  DiConza Traurig Kadish LLP, 630 Third Avenue, 7th Floor, New York, New York 10017, Attn: Maura Russell.

       **PLEASE TAKE FURTHER NOTICE THAT THE FAILURE TO ABIDE BY THE PROCEDURES AND DEADLINES SET FORTH IN THE BIDDING PROCEDURES ORDER AND BIDDING PROCEDURES MAY RESULT IN THE FAILURE OF THE COURT TO CONSIDER A COMPETING BID OR AN OBJECTION TO THE PROPOSED SALE TRANSACTION.**

       **PLEASE TAKE FURTHER NOTICE** that this Auction Notice and the Sale Hearing are subject to the fuller terms and conditions of the Motion, the Bidding Procedures Order and the Bidding Procedures, which shall control in the event of any conflict and the Debtor encourages parties-in-interest to review such documents in their entirety.  The Motion, Agency Agreement, Bidding Procedures Order, Bidding Procedures or any other pleadings may be found at the website of the Debtor's Claims and Noticing Agent, Rust Consulting / Omni Bankruptcy, at http://www.omnimgt.com/joyceleslie/ or, for a fee, at the Court's website, http://www.nysb.uscourts.gov, for registered users of the Public Access to Court Electronic Records (PACER) System.

Dated: New York, NY

_____ [•], 2016

Respectfully submitted,

_____

Kevin J. Nash
Goldberg Weprin Finkel Goldstein LLP
Proposed Counsel for the Debtor
1501 Broadway – 22nd Floor
New York, New York 10036
Telephone: (212) 221-5700
KNash@gwfglaw.com

**<u>Exhibit 3</u>**


**Cure Notice**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| JOYCE LESLIE, INC., | ) | Case No. 16-22035 (RDD) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

## <u>CURE NOTICE</u>

**PLEASE TAKE NOTICE** that Joyce Leslie, Inc., Inc.,  as Debtor and Debtor in possession in the above-captioned case (the "**Debtor**"), on January 14, 2016, filed a motion (the "**Motion**")[1], as subsequently bifurcated, for among other things, entry of an order (the "**Bidding Procedures Order**"), (i) authorizing entry into Stalking Horse Agreement with SB Capital, (ii) authorizing Bid Protections and Signage Costs Reimbursement (iii) authorizing proposed auction procedures (the "**Bidding Procedures**") and setting the time, date and place of the auction (the "**Auction**")**;** (iv) approving the form of notice of the Auction and notice of the Store Closing Sales (the "**Auction Notice**") and (v) setting a hearing (the "**Sale Hearing**"), to be held on February 3, 2016, to consider the entry of the Approval Order.

**You are receiving this Notice because you may be a party to an executory contract or unexpired store lease (the "<u>Transferred Contracts</u>") that is potentially to be assumed and assigned in connection with a Global Transaction involving a so-called going concern buyer that may emerge at or prior to the Auction.  Without a going concern buyer, the Debtor will not seek to sell the store leases at the Auction and will pursue a second auction sale relating only to store leases at a later date.**

In the event of a Global Transaction Bid, the Debtor has determined the current amounts owing (the "**Cure Costs**") under each Transferred Contract and has listed the applicable Cure Costs on **Exhibit A** hereto.  The Cure Costs are the only amounts proposed to be paid upon the assumption and assignment of the Transferred Contracts.  The landlords will be further notified regarding a Global Transaction Bid when and if it is received.

To the extent that a Counterparty objects to the (i) assumption and assignment of such party's Transferred Contract; or (ii) the applicable Cure Costs, the Counterparty must file and serve an objection in accordance with the Bidding Procedures Order so that such objection is received by the anticipated closing date of February 4, 2016 at 5:00 p.m.  Copies of the Bidding Procedures Order are available at the website of the Debtor's Claims and Noticing Agent, Rust Consulting / Omni Bankruptcy, at http://www.omnimgt.com/joyceleslie/ or, for a fee, at the

---

[1]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Court's website, http://www.nysb.uscourts.gov, for registered users of the Public Access to Court Electronic Records (PACER) System

   If no objection is timely received, the Counterparty failing to timely file an objection to the Cure Cost set forth in the Cure Notice shall be forever barred from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtor, its estate, and the Successful Bidder with respect to the Assumed Contract to which it is a Counterparty.

   The hearings with respect to Cure Cost objections will be held at a later date as the Bankruptcy Court may designate.

   The Debtor has not made a decision on whether to assume and assign any store leases at this time. Inclusion of any document in **Exhibit A** shall not constitute or be deemed to be a determination or admission by the Debtor or any successful bidders at the Auction that such document is, in fact, an executory contract or unexpired lease within the meaning of the Bankruptcy Code, and all of the Debtor's rights are preserved with respect to all executory contracts.

Dated: New York, NY   Respectfully submitted,
   _____ [•], 2016

     _____
     Kevin J. Nash
     Goldberg Weprin Finkel Goldstein LLP
     Proposed Counsel for the Debtor
     1501 Broadway – 22nd Floor
     New York, New York 10036
     Telephone: (212) 221-5700
     KNash@gwfglaw.com