**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Joyce Leslie, Inc. | Case No. 16-22035 (RDD) |
| Debtor. |  |

**ORDER APPROVING AUCTION RESULTS, REVISED AGENCY**
**AGREEMENT, AND LIQUIDATION SALE TO BE CONDUCTED**
**BY GORDON BROTHERS RETAIL PARTNERS, LLC**

Upon consideration of the *Debtor's Motion for Orders (I)(A) Authorizing Entry*

*Into Agency Agreement, (B) Authorizing Bid Protections and Bid Reimbursements, (C)*

*Authorizing Bidding Procedures and Auction and (D) Scheduling Sale Hearing and Approving*

*Notice Thereof; (II) Authorizing (A) Sale of Assets and (B) Store Closing Sales and (III)*

*Granting Related Relief* (the "Motion");[1] and adequate notice of the Motion having been given

under the circumstances, and it appearing that no other notice need be given; and upon all

objections and responses to the Motion and all pleadings filed in connection therewith; and it

appearing that this Court has jurisdiction over the  Motion and the relief requeted herein pursuant

to 28 U.S.C. §§ 157(a)-(b) and 1334(b), consideration of the Motion and the relief requested

therein is a core proceeding pursuant to 28 U.S.C. § 157(b) that the Court may decide by final

order and venue being proper in this Court pursuant to 28 U.S.C. 1408 and 1409; and upon the

record of the hearing held by the Court on the Motion on February 3, 2016 (the "Sale Hearing");

and the Debtor and Gordon Brothers Retail Partners, LLC (the "Agent") having agreed upon the

---

[1] All capitalized terms not otherwise defined in this Order have the meaning ascribed to them in the Motion or in the
Agency Agreement.

terms and conditions for the Agent to act as the Debtor's exclusive agent to conduct sales (the

"Sale") of certain of the Debtor's assets, including, without limitation, the Merchandise and

Owned FF&E ("Assets"), which terms and conditions are set forth in that certain Agency

Agreement, by and between the Agent and Debtor, substantially in the form annexed hereto as

**Exhibit A** (the "Agency Agreement");[2] and the transaction represented by the Agency

Agreement having been determined to be the highest and best offer for the Assets; and a hearing

having been held on January 26, 2016 (the "Bidding Procedures Hearing"), whereupon the Court

entered an Order approving bidding procedures [Docket No. 87] (the "Bidding Procedures

Order"); and the Debtor having held an auction on February 2, 2016 at which the Agent's bid

was selected as the highest and best bid for the Assets; and appearances of all interested parties

having been noted on the record of the Sale Hearing; and upon all of the proceedings had before

the Court (including but not limited to the representations and other evidence proffered or

adduced at the Sale Hearing); and the Court having found and determined that the relief sought

in the Motion and granted herein is in the best interests of the Debtor, its estate, its creditors, and

all parties in interest and that the legal and factual bases set forth in the Motion establish good,

sufficient and just cause for the relief granted herein; and after due deliberation and sufficient

cause appearing therefor, it is hereby

---

[2] Consistent with the record made by the Agent's counsel, there will be an additional exhibit to the Agency
Agreement regarding the procedures for inventory taking in certain stores.

**FOUND AND DETERMINED THAT**:[3]

**A.        Jurisdiction:** This Court has jurisdiction to consider the Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b).  Approval of the Debtor's

entry into the Agency Agreement, and the transactions contemplated thereby is a core proceeding

under 28 U.S.C. §§ 157(b) (2) (A), (D), (N) and (O) that the Court may decide by final order.

**B.        Venue:** Venue of these cases in this district is proper pursuant to 28 U.S.C. §

1409(a).

**C.        Statutory Predicates:** The statutory predicates for the approval of the Agency

Agreement and transactions contemplated therein are sections 105, 363, 364 and 554 of the

Bankruptcy Code, Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and Local Rule 6004-1.

**D.        Notice:** Proper, timely, adequate and sufficient notice of the Motion and the Sale

Hearing has been provided in accordance with sections 102(1), 105(a), and 363 of the

Bankruptcy Code, Bankruptcy Rules 2002, 4001 and 6004, and in compliance with the Bidding

Procedures Order.  No other or further notice is required.

**E.        Opportunity to be Heard:** A reasonable opportunity to object or be heard

regarding the relief requested in the Motion and the transactions pursuant thereto has been

afforded to all interested persons and entities, including, without limitation, the following: (a) the

Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee");

---

[3]   The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and
conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy
Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed,
and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

(b) all the Debtor's landlords; (c) all applicable federal, state, and local taxing authorities (the

"Taxing Authorities"); (d) all applicable state attorneys general; (e) all other government

agencies required to receive notice under the Bankruptcy Rules; (f) the 20 largest unsecured

creditors of the Debtor; (g) any other party that filed a notice of appearance in the case; (h) any

parties known by the Debtor to be potentially interested in participating in the auction; counsel to

the Official Committee of Unsecured Creditors; and (j) any other party appearing on the Debtor's

creditor matrix (collectively, the "Notice Parties").  All objections, if any, to the Motion have

been withdrawn or resolved and, to the extent not withdrawn or resolved, are hereby overruled.

F.        **Marketing Process:**  As demonstrated by (i) the representations and other

evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made

on the record at the Bidding Procedures Hearing, the Debtor has thoroughly marketed the Assets

in light of its circumstances and has conducted the bidding solicitation fairly, with adequate

opportunity for parties that either expressed an interest in acquiring or liquidating the Assets, or

who the Debtor believed may have had an interest in acquiring or liquidating the Assets, to

submit competing bids.  The Debtor and the Agent have respectively negotiated and undertaken

their roles leading to the Sale and entry into the Agency Agreement in a diligent, noncollusive,

fair and good faith manner.  The Debtor has conducted the marketing and sale process as set

forth in and in accordance with the Motion and the Bidding Procedures Order, and at the

Auction, with the full participation of the Official Committee of Unsecured Creditors, selected

the bid of the Agent pursuant to the Agency Agreement as the highest and best offer for the

Assets after the submission and consideration of multiple bids by multiple qualified bidders.

G.       **Highest and Best Offer:**  The Agency Agreement, including the form and total

consideration to be realized by the Debtor pursuant to the Agency Agreement, (i) is the highest

and best offer received by the Debtor for the Assets, (ii) is fair and reasonable, and (iii) is in the

best interests of the Debtor, its estate, its creditors and all other parties in interest.  There is no

legal or equitable reason to delay entry into the Agency Agreement, and the transactions

contemplated therein, including, without limitation, the Sale and the failure to enter into and

perform the Agency Agreement and such transactions promptly will cause immediate and

irreparable harm to the Debtor's estate.

H.       **Business Judgment:**  The Debtor's decision to (i) enter into the Agency

Agreement, and (ii) perform under and make payments required by the Agency Agreement, is a

reasonable exercise of the Debtor's sound business judgment consistent with its fiduciary duties

and is in the best interests of the Debtor, its estate, its creditors, and all other parties in interest.

The Debtor has articulated good and sufficient reasons for the approval of the Agency

Agreement and the Sale.

I.       **Personally Identifiable Information:**  The transactions contemplated by the

Agency Agreement do not include the sale or lease of personally identifiable information, as

defined in section 101(41A) of the Bankruptcy Code ("Personally Identifiable Information") (or

assets containing Personally Identifiable Information).

J.       **Time of the Essence:**  Time is of the essence in effectuating the Agency

Agreement and proceeding with the Sale contemplated therein without interruption.  Based on

the record of the Bidding Procedures Hearing, the Sale Hearing, and for the reasons stated on the

5

record at the Sale Hearing, the Sale in accordance with the terms of the Agency Agreement and

this Order must be commenced as soon as possible following entry of this Order, but in no event

later than February 5, 2016 (the "Sale Commencement Date"), to maximize the value that the

Agent may realize from the Sale, and the value that the Debtor may realize from entering into the

Agency Agreement.  Accordingly, cause exists to lift the stay, as contemplated by Bankruptcy

Rules 4001(a) and 6004(h), to permit the immediate effectiveness of this Order.

K.       **Sale Free and Clear:**  The Debtor is the sole and lawful owner of the Assets.

The Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's

estate within the meaning of section 541(a) of the Bankruptcy Code.  A sale of the Assets other

than one free and clear of liens, claims, encumbrances, defenses (including, without limitation,

rights of setoff and recoupment) and interests, including, without limitation, security interests of

whatever kind or nature, mortgages, conditional sales or title retention agreements, pledges,

deeds of trust, hypothecations, liens, encumbrances, assignments, preferences, debts, easements,

charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court

or foreign or domestic governmental entity, taxes (including foreign, state, local and ad valorem

taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims

for reimbursement, contribution, indemnity or exoneration, successor, product, environmental,

tax, labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights and

claims, to the fullest extent of the law, in each case, of any kind or nature (including, without

limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or

unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or

unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed

or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material,

statutory or non-statutory, matured or unmatured, legal or equitable (collectively,

"Encumbrances"), and without the protections of this Order would hinder the Debtor's ability to

obtain the consideration provided for in the Agency Agreement and, thus, would impact

materially and adversely the value that the Debtor's estate would be able to obtain for the sale of

such Assets.  But for the protections afforded to the Agent under the Bankruptcy Code and this

Order, the Agent would not have offered to pay the consideration contemplated in the Agency

Agreement.  In addition, each entity with an Encumbrance upon the Assets, if any, (i) has

consented to the Sale and the sale and disposition of the Assets in the manner contemplated by

the Agency Agreement and this Order or is deemed to have consented to the Sale and the sale

and disposition of the Assets in the manner contemplated by the Agency Agreement and this

Order, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of

such interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy

Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5)

of the Bankruptcy Code has been satisfied.  Those holders of Encumbrances who did not object,

or who withdrew their objections, to the Motion are deemed to have consented pursuant to

section 363(f)(2) of the Bankruptcy Code.  Therefore, approval of the Agency Agreement and

the consummation of the Sale and the other transactions contemplated thereby free and clear of

Encumbrances is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best

interests of the Debtor's estate, its creditors and other parties in interest.

L.        **Arms-length Sale:** The consideration to be paid by the Agent under the Agency

Agreement was negotiated at arm's-length and constitutes reasonably equivalent value and fair

and adequate consideration for the right to serve as the Debtor's exclusive agent to conduct the

Sale of the Assets and the other rights granted to the Agent by the Agency Agreement and this

Order under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent

Conveyance Act and the laws of all applicable jurisdictions, including, without limitation, the

United States, any state, territory, possession thereof or the District of Columbia.  The terms and

conditions set forth in the Agency Agreement are fair and reasonable under these circumstances

and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying

or defrauding the Debtor or its creditors under any applicable laws.

M.        **Good Faith:** The Debtor, its management and its board, and the Agent, its

members and its officers, directors, employees, agents and representatives, actively participated

in the bidding process and acted in good faith.  The Agency Agreement between the Agent and

the Debtor was negotiated and entered into based upon arm's length bargaining, without

collusion or fraud, and in good faith as that term is used in sections 363(m) and 364(e) of the

Bankruptcy Code.  The Agent shall be protected by sections 363(m) and 364(e) of the

Bankruptcy Code in the event that this Order is reversed, modified, amended or vacated on

appeal or by a subsequent order of this Court or any other court.  The Debtor was free to deal

with any other party interested in buying or selling on behalf of the Debtor's estate some or all of

the Assets.  Neither the Debtor nor the Agent has engaged in any conduct that would cause or

permit the Sale, the Agency Agreement, or any related action or the transactions contemplated

thereby to be avoided under section 363(n) of the Bankruptcy Code, or that would prevent the

application of sections 363(m) or 364(e) of the Bankruptcy Code.  The Agent has not violated

section 363(n) of the Bankruptcy Code by any action or inaction and the transactions approved

by this Order are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

Specifically, the Agent has not acted in a collusive manner with any person and was not

controlled by any agreement among bidders.  The Agent's prospective performance and payment

of amounts owing under the Agency Agreement are in good faith and for valid business purposes

and uses.

     **N.**       **Insider Status:**  The Agent is not an "insider" or "affiliate" of the Debtor as those

terms are defined in section 101(31) of the Bankruptcy Code.  No common identity of directors

or controlling stockholders exists between the Agent and the Debtor.

     **O.**       **Security Interests:**  The liens provided for in the Agency Agreement and this

Order to secure the obligations of the Debtor under the Agency Agreement to the Agent are

necessary to induce the Agent to agree to terms for the Agency Agreement that maximize value

for the Debtor's estate.  The absence of such protections would impact materially and adversely

the value available to the Debtor in the liquidation of its stores in partnership with a liquidation

agent.  But for the protections afforded to the Agent under the Bankruptcy Code, this Order, and

the Agency Agreement, the Agent would not have agreed to pay the Debtor the compensation

provided for under the Agency Agreement.

     **P.**       **Corporate Authority:**  Subject to the entry of this Order, the Debtor (i) has full

corporate or other power to execute, deliver and perform its obligations under the Agency

Agreement and all other transactions contemplated thereby (including without limitation,

reaching an agreement and resolution regarding the final reconciliation contemplated by the

Agency Agreement), and entry into the Agency Agreement has been duly and validly authorized

by all necessary corporate or similar action, (ii) has all of the corporate or other power and

authority necessary to consummate the transactions contemplated by the Agency Agreement, and

(iii) has taken all actions necessary to authorize and approve the Agency Agreement and the

transactions contemplated thereby.  No consents or approvals, other than those expressly

provided for herein or in the Agency Agreement, are required for the Debtor to consummate such

transactions.

**Q.**        **No Successor Liability:**  No sale, transfer or other disposition of the Assets, the

Additional Agent Merchandise or any other property pursuant to the Agency Agreement or entry

into the Agency Agreement will subject the Agent to any liability for claims, obligations or

Encumbrances asserted against the Debtor or the Debtor's interests in such Assets by reason of

such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory

of successor or transferee liability, antitrust, environmental, product line, de facto merger or

substantial continuity or similar theories.  The Agent is not a successor to the Debtor or its estate.

**R.**        **No Sub Rosa Plan:**  Entry into the Agency Agreement and the transactions

contemplated thereby neither impermissibly restructures the rights of the Debtor's creditors, nor

impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor.  Entry

into the Agency Agreement does not constitute a sub rosa chapter 11 plan.

10

S.        **Approval Order:**  This Order shall constitute the Approval Order as
contemplated by the Agency Agreement.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND
DECREED THAT:**

**A.    Motion Granted, Objections Overruled**

1.        The relief requested in the Motion is granted as set forth herein.

2.        Any remaining objections to the Motion or the relief requested therein that
have not been withdrawn, waived, or settled, including, without limitation, on the record of the
Sale Hearing, and all reservations of rights included in such objections are overruled in all
respects and denied.

**B.    Agency Agreement Approved and Authorized**

3.        The Agency Agreement is approved pursuant to sections 105 and 363 of
the Bankruptcy Code.  The Debtor is authorized and empowered to enter into and perform under
the Agency Agreement, and the Agency Agreement (and each of the transactions contemplated
therein (including without limitation, reaching an agreement and resolution regarding the final
reconciliation contemplated by the Agency Agreement, which agreement and resolution shall be
binding on all parties (including (without limitation) the Debtor, the Committee, any successor
chapter 7 or chapter 11 trustee, and all other parties in interest) without further order of the
Court)) is hereby approved in its entirety and is incorporated herein by reference.  The failure to
include specifically any particular provision of the Agency Agreement in this Order shall not
diminish or impair the effectiveness of such provisions, it being the intent of the Court that the

11

Agency Agreement and all of its provisions, payments and transactions, be authorized and approved in their entirety.  Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

4.       The Debtor is authorized, pursuant to sections 105 and 363(b) of the Bankruptcy Code and solely in accordance with the Agency Agreement, to retain the Agent to conduct the Sale and to sell the Assets and the Additional Agent Merchandise in the manner contemplated by the Agency Agreement.

5.       All amounts payable to the Agent under the Agency Agreement shall be payable to the Agent without the need for any application of the Agent therefor or any further order of the Court.

6.       Subject to the provisions of this Order, the Debtor and the Agent are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the Sale and consummate the sale of the Assets and the Additional Agent Merchandise in accordance with the Agency Agreement and the sale guidelines (the "GOB Sale Guidelines") attached hereto as **Exhibit B**, which GOB Sale Guidelines are hereby approved in their entirety.

7.       Pursuant to section 363(b) of the Bankruptcy Code, the Debtor, the Agent and each of their respective officers, employees and agents are hereby authorized to execute such documents and to take any and all actions as may be necessary or desirable to carry out the Sale, consummate the sale of the Assets and the Additional Agent Merchandise and effectuate or implement the Agency Agreement and each of the transactions and related actions contemplated or set forth therein (including, without limitation, the Sale).  Lee Diercks, Chief Restructuring

Officer, and/or such other person(s) as are expressly designated to act on the Debtor's behalf, are

specifically authorized to act on behalf of the Debtor in connection with the Sale and the sale of

the Assets and the Additional Agent Merchandise and no other consents or approvals are

necessary or required for the Debtor to carry out the Sale, consummate the sale of the Assets and

the Additional Agent Merchandise and effectuate the Agency Agreement and each of the

transactions and related actions contemplated or set forth therein.

**C.      Order Binding**

8.      This Order shall be binding upon and shall govern the acts of all entities,

including, without limitation, all filing agents, filing officers, title agents, title companies,

recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies,

governmental departments, secretaries of state, federal, state and local officials, and all other

persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to the Assets or the

Additional Agent Merchandise.

9.      This Order and the terms and provisions of the Agency Agreement shall

be binding on all of the Debtor's creditors (whether known or unknown), the Debtor, the Agent,

and their respective affiliates, successors and assigns, and any affected third parties including,

but not limited to, all persons asserting an interest in the Assets, notwithstanding any subsequent

appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy

Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary,

such terms and provisions likewise shall be binding.  The provisions of this Order and the terms

and provisions of the Agency Agreement, and any actions taken pursuant hereto or thereto shall

survive the entry of any order which may be entered confirming or consummating any plan(s) or

reorganization or liquidation of the Debtor or converting the Debtor's case from chapter 11 to

chapter 7, and the terms and provisions of the Agency Agreement, as well as the rights and

interests granted pursuant to this Order and the Agency Agreement, shall continue in this or any

superseding case and shall be binding upon the Debtor, the Agent and their respective successors

and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal

representative of the Debtor under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee

appointed in this case shall be and hereby is authorized to operate the business of the Debtor to

the fullest extent necessary to permit compliance with the terms of this Order and the Agency

Agreement, and the Agent and any such trustee shall be and hereby are authorized to perform

under the Agency Agreement upon the appointment of the trustee without the need for further

order of this Court.

**D.      Good Faith.**

           10.      Entry into the Agency Agreement is undertaken by the parties thereto in

good faith, as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code, and Agent

shall be protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this

Order is reversed, modified, amended or vacated on appeal or by a subsequent order of this Court

or any other court.  The reversal, modification, amendment or vacatur on appeal or by a

subsequent order of this Court or any other court of the authorization provided herein to enter

into the Agency Agreement and consummate the transactions contemplated thereby shall not

affect the validity of such transactions (including, without limitation, the Sale or the liens or

priority authorized or created under the Agency Agreement or this Order), unless such

authorization is duly stayed pending such appeal.  The Agent is entitled to all of the benefits and

protections afforded by sections 363(m) and 364(e) of the Bankruptcy Code.  The transactions

contemplated by the Agency Agreement are not subject to avoidance pursuant to section 363(n)

of the Bankruptcy Code.

**E.    Conduct of the Sale**

11.    Except as otherwise provided in the Agency Agreement, and subject to the

terms thereof, pursuant to section 363(f) of the Bankruptcy Code, the Agent shall be authorized

to sell all Merchandise, the Owned FF&E and other Assets, as well as the Additional Agent

Merchandise, to be sold pursuant to the Agency Agreement free and clear of any and all

Encumbrances, including, without limitation, any existing liens and security interests, as the

same may have been amended from time to time, whether arising by agreement, any statute or

otherwise and whether arising before, on or after the date on which this chapter 11 case was

commenced, with any presently existing Encumbrances encumbering all or any portion of the

Assets, the Proceeds or any proceeds of the foregoing attaching only to the Guaranteed Amount

and, subject to the Agent's liens granted pursuant to the Agency Agreement and this Order, other

amounts payable by the Agent to the Debtor under the Agency Agreement, with the same

validity, priority, force and effect as the same had with respect to the assets at issue, subject to

any and all defenses, claims and/or counterclaims or setoffs that may exist.  For the sake of

clarity, however, nothing in this paragraph is intended to diminish the liens in favor of the Agent, as reflected in the Agency Agreement and this Order, that attach to, among other things, the Proceeds of the Sale.

12.     If any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, lis pendens or other documents or agreement evidencing liens on or interests in the Assets shall not have delivered to the Debtor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Encumbrances which the person or entity has with respect to the Assets, each such person or entity is hereby directed to deliver all such statements, instruments and releases and the Debtor and the Agent are hereby authorized to execute and file such statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Agent is authorized to file a copy of this Order which, upon filing, shall be conclusive evidence of the release and termination of such interest.  Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Sale and related transactions.

13.     Subject to the occurrence of the Sale Commencement Date, all entities that are presently in possession of some or all of the Assets or other property in which the Debtor holds an interest that are or may be subject to the Agency Agreement hereby are directed to surrender possession of such Assets or other property to the Agent.

14.     The Debtor and the Agent shall not extend the Sale Termination Date beyond March 31, 2016 unless (i) extended by mutual written agreement of the Debtor and the

Agent, following a commensurate extension of the expiration date of the Agent Letter of Credit; and (ii) all amounts due are timely paid on a weekly basis, or the pro rata portion thereof, for February or March rent, through the Sale Termination Date, to the extent applicable, under any lease for a store from which the Sales are conducted.

15.    Except to the extent of the rights of Governmental Units expressly reserved elsewhere in this Order, or otherwise set forth in a letter by and between the Agent and a particular landlord (a "Side Letter"), Agent and the Debtor are authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to conduct, advertise, post signs and banners and otherwise promote the Sale as a "going out of business," "store closing," "sale on everything," "total liquidation," "everything must go," or similarly themed sale (including, without limitation, by means of media advertising, interior and exterior banners, A-frames, and similar signage and the use of sign walkers and street signage) without further consent of any person, in accordance with the terms and conditions of the Agency Agreement, the GOB Sale Guidelines and this Order (as the same may be modified and approved by the Bankruptcy Court) and without compliance with the GOB Laws or the Liquidation Sale Laws, subject to compliance with the Sale Guidelines and Approval Order.

16.    During the Sale Term, Agent shall be granted a limited royalty free license and right to use until the Sale Termination Date the trademarks, trade names, logos, customer lists, websites, URL, social media, mailing lists and email lists relating to and used in connection with the operation of the Stores, solely for the purpose of advertising the Sale in accordance with

17

the terms of the Agency Agreement; provided, however, that the Agent shall not receive

Personally Identifiable Information from the Debtor.

17.    Unless otherwise ordered by the Court, all newspapers and other

advertising media in which the Sale may be advertised and all landlords are directed to accept

this Order as binding authority so as to authorize the Debtor and the Agent to consummate the

Agency Agreement and to consummate the transactions contemplated therein, including, without

limitation, to conduct and advertise the Sale in the manner contemplated by the Agency

Agreement, including, without limitation, conducting and advertising of the Sale (at the

contractual rates charged to the Debtor prior to the Petition Date) in accordance with the Agency

Agreement, the GOB Sale Guidelines, this Order, and any Side Letter.  Agent shall be authorized

to include Additional Agent Merchandise in the Sale.

18.    Any amounts owed by the Debtor to Agent under the Agency Agreement

shall be granted the status of superpriority claims pursuant to section 364(c) of Bankruptcy Code

senior to all other superpriority claims; provided that until the Debtor receives payment in full of

the Guaranteed Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the

Agent FF&E Commission) or the FF&E Guaranty Amount, as applicable, and such other

amounts due to the Debtor, any superpriority claim granted to Agent, shall be junior and

subordinate in all respects to any existing superpriority claims but solely to the extent of the

amount of the unpaid portion of the Guaranteed Amount, Expenses, the proceeds realized upon a

sale of Owned FF&E (less the Agent's FF&E Commission) or the FF&E Guaranty Amount, as

applicable, and such other amounts due to the Debtor under the Agency Agreement.

19.        Nothing in this Order or the Agency Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Order.  Nothing contained in this Order or in the Agency Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtor to comply with environmental laws consistent with its rights and obligations as Debtor in possession under the Bankruptcy Code.  Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation.  Moreover, the Sale shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "_General Laws_").  Nothing in this Order or the Agency Agreement shall alter or affect the Debtor's and Agent's obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Order shall be deemed to bar any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtor's or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order, or otherwise, pursuant to Paragraph 15 hereunder.  Notwithstanding any other provision in this

Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Order shall be deemed to have made any rulings on any such issues.

20.    <u>Disputes Between Government Units and the Debtor or the Agent</u>. To the extent that the Sale is subject to any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," "sale on everything," "total liquidation," "everything must go," or similar inventory liquidation sales, or bulk sale laws (each a "<u>GOB Law</u>," and together, the "<u>GOB Laws</u>"), including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions or fast pay laws that would otherwise apply to the Sale (collectively, the "<u>Liquidation Laws</u>"), the following provisions shall apply:

a.    Provided that the Sale is conducted in accordance with the terms of this Order, the Agency Agreement and the GOB Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtor shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and, subject to Paragraphs 21 and 22 herein, are authorized to conduct the Sale in accordance with the terms of this Order and the GOB Sale Guidelines without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.

b.      Within five (5) business days of entry of this Order, the Debtor

shall serve copies of this Order, the Agency Agreement and the Sale Guidelines via e-mail,

facsimile or regular mail, on:  (i) the Attorney General's office for each state where the Sale will

be held, (ii) the county consumer protection agency or similar agency for each county where the

Sale will be held, (iii) the division of consumer protection for each state where the Sale will be

held; and (iv) the chief legal counsel for each such local jurisdiction.

c.      To the extent there is a dispute arising from or relating to the Sale,

this Order, the Agency Agreement, or the GOB Sale Guidelines, which dispute relates to any

GOB Laws or Liquidation Laws (a "Reserved Dispute"), the Court shall retain exclusive

jurisdiction to resolve the Reserved Dispute.  Any time within fifteen (15) days following service

of this Order, any Governmental Unit may assert that a Reserved Dispute exists by serving

written notice of such Reserved Dispute to counsel for the Debtor and counsel for the Agent at

the addresses set forth in the Agency Agreement so as to ensure delivery thereof within one (1)

business day thereafter.  If the Debtor, the Agent and the Governmental Unit are unable to

resolve the Reserved Dispute within fifteen (15) days of service of the notice, the aggrieved party

may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a

"Dispute Resolution Motion").

d.      In the event a Dispute Resolution Motion is filed, nothing in this

Order shall preclude the Debtor, a landlord, the Agent or other interested party from asserting (i)

that the provisions of any GOB Laws and/or Liquidation Laws are preempted by the Bankruptcy

Code or (ii) that neither the terms of this Order, nor the Debtor or the Agent's conduct pursuant

to this Order, violates such GOB Laws and/or Liquidation Laws.  Filing a Dispute Resolution

Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or

interfere with the Debtor's or the Agent's ability to conduct or to continue to conduct the Sale

pursuant to this Order and the Agency Agreement, absent further order of this Court.  The Court

grants authority for the Debtor and the Agent to conduct the Sale pursuant to the terms of this

Order, the Agency Agreement, and/or the GOB Sale Guidelines attached hereto and to take all

actions reasonably related thereto or arising in connection therewith.  The Governmental Unit

shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with

respect to the requirements of its Liquidation Laws or the lack of any preemption of such GOB

Laws and/or Liquidation Laws by the Bankruptcy Code.  Nothing in this Order shall constitute a

ruling with respect to any issues to be raised in any Dispute Resolution Motion.

       e.     If, at any time, a dispute arises between the Debtor and/or the

Agent and a Governmental Unit as to whether a particular law is a GOB Law and/or Liquidation

Law, and subject to any provisions contained in this Order related to GOB Laws and/or

Liquidation Laws, then any party to that dispute may utilize the provisions of Subparagraphs (b)

through (d) hereunder by serving a notice to the other party and proceeding thereunder in

accordance with those Paragraphs.  Any determination with respect to whether a particular law is

a GOB Law and/or Liquidation Law shall be made de novo.

       21.    Notwithstanding anything herein to the contrary, and in view of the

importance of the use of sign-walkers, banners, and other advertising to the Sale, to the extent

that disputes arise during the course of the Sale regarding laws regulating the use of sign-walkers

and banner advertising and the Debtor and the Agent are unable to resolve the matter

consensually with the Governmental Unit, any party may request an immediate telephonic

hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable,

be scheduled initially within two (2) business days of such request.  This scheduling shall not be

deemed to preclude additional hearings for the presentation of evidence or arguments as

necessary.

   22. Except as expressly provided in the Agency Agreement, the Sale shall be

conducted by the Debtor and the Agent notwithstanding any restrictive provision of any lease,

sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct

of the Sale, the rejection of leases, abandonment of assets or "going dark" or similar provisions.

The Agent and landlords of the Stores are authorized to enter into separate agreements and/or

Side Letters between themselves modifying the GOB Sale Guidelines without further order of

the Court, and such Side Letters shall be binding as among the Agent and any such landlords,

provided that nothing in such Side Letters affects the provisions of Paragraphs 20 and 21

(provided that in no event shall such Side Letters impose additional costs, expense or liability

upon the Debtor without the prior written consent of the Debtor).  In the event of any conflict

between the GOB Sale Guidelines and any Side Letter, the terms of such Side Letter shall

control.  In the event of a dispute regarding the Guidelines or any Side Letter, counsel for each of

the Debtor, the applicable landlord, and the Agent shall meet and confer to resolve the dispute.

In the event that the parties are unable to resolve the dispute, any party seeking relief may

request a prompt hearing before the Court to resolve such dispute.

23.     Except as expressly provided for herein or in the GOB Sale Guidelines,

and except with respect to any Governmental Unit (as to which Paragraphs 20 and 21 shall

apply), no person or entity, including but not limited to any utility company, Internet service

provider, website service or hosting provider, landlord, licensor, creditor or other interested party

or any person acting for or on behalf of the foregoing shall take any action to directly or

indirectly prevent, interfere with, impede or otherwise hinder consummation of the Sale or the

other transactions contemplated by the Agency Agreement, or the advertising and promotion

(including the posting of signs and exterior banners or the use of signwalkers) of such Sale or the

other transactions contemplated by the Agency Agreement, and all such parties and persons of

every nature and description, including landlords, licensors, creditors, utility companies, Internet

service providers, website service or hosting providers and other interested parties and all those

acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way

with, or otherwise impeding, the conduct or advertising and promotion (including the posting of

signs and exterior banners or the use of sign-walkers) of the Sale and the other transactions

contemplated by the Agency Agreement and/or (ii) instituting any action or proceeding in any

court or administrative body seeking an order or judgment against, among others, the Debtor, the

Agent, or the landlords at the Stores that might in any way directly or indirectly impede, obstruct

or otherwise interfere with or adversely affect the conduct or advertising and promotion

(including the posting of signs and exterior banners or the use of sign-walkers) of the Sale and

the other transactions contemplated by the Agency Agreement or other liquidation sales at the

Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

24.    The Agent shall have the right to use the Stores and Distribution Center (to the extent applicable) and all related services, furniture, fixtures, equipment and other assets of the Debtor for the purpose of conducting the Sale, free of any interference from any entity or person, subject to compliance with the GOB Sale Guidelines and this Order.

25.    The Agent shall be permitted to include in the Sale Additional Agent Merchandise in accordance with the terms and provisions of the Agency Agreement.  Any transactions relating to the Additional Agent Merchandise are, and shall be construed as, a true consignment from Agent to Debtor.  Debtor acknowledge that the Additional Agent Merchandise shall be consigned to Debtor as a true consignment under Article 9 of the Uniform Commercial Code in effect in the State of New York (the "UCC").  Agent is hereby granted a first priority security interest in (i) the Additional Agent Merchandise and (ii) the Additional Agent Merchandise proceeds, which security interest shall be deemed perfected pursuant to this Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties (provided that Agent is hereby authorized to deliver any notices and file any financing statements and amendments thereof under the applicable UCC identifying Agent's interest in the Additional Agent Merchandise (and any proceeds from the sale thereof) as consigned goods thereunder and the Debtor as the consignee therefor, and Agent's security interest in such Additional Agent Merchandise and Additional Agent Merchandise proceeds).  Subject to the terms of the Agency Agreement, and solely to the extent applicable, the proceeds

of the sales of Additional Agent Merchandise sold at a particular Store shall be taken into account when calculating any percentage rent due pursuant to the terms of the applicable lease agreement.

26.     During the Sale Term applicable to any Store and for purposes of conducting the Sale at such Store, Agent shall have the right to the unencumbered use and occupancy of, and peaceful and quiet possession of, such Store and the assets currently located at such Store, in each case subject to the extent of Debtor's rights and entitlement to use the same, and the services provided at such Store to the extent Debtor is entitled to such services; and the Debtor shall not assign, reject or otherwise terminate any lease relating to any such Store, or vacate any such store, where such assignment, rejection, termination or vacatur, would have an effective date prior to the applicable Sale Termination Date or Vacate Date for such Store.

27.     To the extent Agent is owed any amounts in respect of overfunding in respect of the Guaranteed Amount (including, without limitation, the Adjustment Amount), the Debtor shall, within two (2) business days after written request by Agent disgorge and remit to Agent the portion, if any, of such amount that is undisputed or that has been determined to be owing to Agent by the Court.  Within five (5) business days of entry of this Order, Debtor shall pay all postpetition rent for the period February 1, 2016 through February 8, 2016, and thereafter on a weekly basis on each Tuesday as applicable.  The applicable postpetition rent shall be paid by the Debtor in accordance with existing leases from which the Sales are being conducted on a weekly basis, or the pro rata portion thereof, until such time as such lease is rejected or assumed and assigned.

28.    Nothing in the Agency Agreement or this Order shall (a) alter or affect the

Debtor's obligations to comply with section 365(d)(3) of the Bankruptcy Code or (b) alter or

modify the rights of any lessor or other counterparty to a lease with the Debtor to file an

appropriate motion or otherwise seek appropriate relief if the Debtor fails to comply with section

365(d)(3) of the Bankruptcy Code; provided that the conduct of the Sale in accordance with the

Sale Guidelines shall not be a violation of section 365(d)(3) of the Bankruptcy Code.

29.    Pursuant to section 554(a) of the Bankruptcy Code, the Debtor and the

Agent, as applicable, are permitted to abandon property of the Debtor's estate (including, without

limitation, Owned FF&E) in accordance with the terms and provisions of the Agency

Agreement, without the Debtor or the Agent incurring liability to any person or entity; *provided,*

*however*, that, unless the Agent otherwise consents, the Debtor may only abandon property

located in any Store (and, if applicable, the Distribution Center) on or after the applicable Vacate

Date; provided, however, that any such abandonment by the Debtor shall be in accordance with

the Order Approving Procedures for Rejection Of Unexpired Leases entered contemporaneously

herewith.  In the event of any such abandonment, all applicable landlords shall be authorized to

dispose of such property without any liability to any individual or entity that may claim an

interest in such abandoned property, and such abandonment shall be without prejudice to any

landlord's right to assert any claim based on such abandonment and without prejudice to the

Debtor or other party in interest to object thereto.

30.    Before any going out of business sale, abandonment or other disposition of

the Debtor's computers (including software) and/or cash registers and any other point of sale

Owned FF&E located at the Stores (collectively, "POS Equipment") that may contain customer

lists, identifiable personal and/or confidential information about the Debtor's employees and/or

customers, or credit card numbers ("Confidential Information") takes effect, the Debtor (and not

the Agent) shall make reasonable attempts to remove or cause to be removed the Confidential

Information from the POS Equipment, and unless otherwise notified by Debtor in writing to the

contrary, the Agent shall be entitled to assume and presume that the Debtor has satisfactorily

completed such steps at or prior to the time of any such sale, abandonment or other disposition.

      31.    The Agent shall accept the Debtor's validly issued gift cards, gift

certificates, merchandise credits and other similar credits issued by the Debtor, if any, as well as

the Debtor's customer membership or customer loyalty discount programs, in any transaction

conducted in connection with the Sale pursuant to the provisions of Section 8.6 of the Agency

Agreement through February 9, 2016, and the Debtor shall reimburse Agent for such amounts

during the weekly sale reconciliation provided for and subject to the limitations set forth in

Sections 8.6 and 8.7 of the Agency Agreement.  During the Sale Term, the Agent shall accept

returns of merchandise sold by the Debtor prior to the Sale Commencement Date pursuant to the

provisions of Section 8.5 of the Agency Agreement, provided that such return is otherwise in

compliance with the Debtor's return policies in effect as of the date such item was purchased,

and the Debtor shall reimburse Agent for such amounts during the weekly sale reconciliation

provided for and subject to the limitations set forth in Section 8.7 of the Agency Agreement.

      32.    All state and federal laws relating to implied warranties for latent defects

shall be complied with and are not superseded by the sale of said goods or the use of the terms

28

"as is" or "final sales."  The Debtor and/or the Agent shall accept return of any goods purchased during the Sale that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.  Subject to the terms of the Agency Agreement, the Debtor shall promptly reimburse Agent in cash for any refunds Agent is required to issue to customers in respect of any goods purchased during the Sale that contain such a latent defect.

33.    Except as expressly provided for in the Agency Agreement, nothing in this Order or the Agency Agreement, and none of the Agent's actions taken in respect of the Sale, the sale of the Assets and the Additional Agent Merchandise or the other transactions contemplated by the Agency Agreement shall be deemed to constitute an assumption by the Agent of any of the Debtor's obligations relating to any of the Debtor's employees.  Moreover, the Agent shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

34.    The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement and the collection, reporting and payment of any and all sales taxes is the legal responsibility of the Debtor.  Subject to the terms of the Agency Agreement, the Debtor is directed to remit all taxes arising from the Sale to the applicable Taxing Authorities as and when due, provided that in the case of a bona fide dispute the Debtor is only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the Taxing Authority.  For the avoidance of doubt, sales taxes collected and held in trust by the

Debtor shall not be used to pay any creditor or any other party, other than the Taxing Authority

for which the sales taxes are collected.  The Agent shall collect, remit to Debtor, and account for

sales taxes as and to the extent provided in the Agency Agreement.  This Order does not enjoin,

suspend or restrain the assessment, levy or collection of any tax under State law, and does not

constitute a declaratory judgment with respect to any party's liability for taxes under State law.

35.     Subject to the terms set forth in the Agency Agreement, the Debtor and/or

the Agent (as the case may be) is authorized and empowered to transfer the Assets and the

Additional Agent Merchandise among the Stores and the Distribution Center (to the extent

applicable).  The Agent is authorized to sell the Debtor's furniture, fixtures and equipment and

abandon the same, in each case, as provided for and in accordance with the terms of the Agency

Agreement.

**F.    Liens Granted To Agent**

36.     Pursuant to Section 364(d) of the Bankruptcy Code, the Agent shall have,

effective upon payment by the Agent of the Initial Guaranty Payment on the Payment Date and

delivery of the Letter of Credit to Debtor, valid, duly perfected first priority, senior security

interests in and liens (subject to the subordination provisions set forth herein below) upon:  (i)

the Merchandise; (ii) the Additional Agent Merchandise; (iii) all Proceeds (including, without

limitation, credit card Proceeds);  (iv) in the event the Debtor elects the FF&E Guaranty Option,

the Owned FF&E and the proceeds realized from the sale or other disposition of Owned FF&E

after payment of the FF&E Guaranty Amount; or, alternatively, the FF&E Commission; (v) the

Agent's percentage share in excess of the Agent Threshold, and (vi) all "proceeds" (within the

meaning of Section 9-102(a)(64) of the UCC) of each of the foregoing (all of which are

collectively referred to herein as the "Agent Collateral"), to secure the full payment and

performance of all obligations of the Debtor to the Agent under the Agency Agreement. For the

avoidance of doubt, the Agent Collateral shall not include the Guaranteed Amount or any other

amount payable by the Agent to the Debtor under the Agency Agreement or any proceeds

thereof. Upon entry of this Order, payment of the Initial Guaranty Payment and delivery of the

Letter of Credit to the Debtor, the security interest granted to the Agent pursuant to the Agency

Agreement and hereunder shall be deemed properly perfected without the necessity of filing

UCC-1 financing statements or any other documentation. Without any further act by or on

behalf of the Agent or any other party (including (without limitation) the Debtor), the Agent's

security interests and liens in the Agent Collateral created under the Agency Agreement and

hereunder are (i) validly created, (ii) perfected, and (iii) senior to all other liens and security

interests, provided, however, that (x) until the Debtor receives payment in full of the Guaranteed

Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E

Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts due to the

Debtor hereunder, the security interest granted to Agent under the Agency Agreement and

hereunder shall be junior and subordinate in all pre-existing security interests in the Agent

Collateral, but solely to the extent and amount of the unpaid portion of the any of the Guaranteed

Amount, Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E

Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts due to the

Debtor under the Agency Agreement, and (y) upon payment in full of the Guaranteed Amount,

Expenses, the proceeds realized upon a sale of Owned FF&E (less the Agent FF&E

Commission) or the FF&E Guaranty Amount, as applicable, and such other amounts due to the

Debtor under the Agency Agreement, any security interest or lien in the Agent Collateral shall

each be junior and subordinate in all respects to the security interest and liens of the Agent in the

Agent Collateral.  The Debtor shall cooperate with the Agent with respect to all filings

(including, without limitation, UCC-1 financing statements) and other actions to the extent

reasonably requested by the Agent in connection with the security interests and liens granted

under the Agency Agreement.  The Debtor will not sell, grant, assign or transfer any security

interest in, or permit to exist any encumbrance on, any of the Agent Collateral other than in favor

of the Agent.  In the event of a default by the Debtor hereunder, in any jurisdiction where the

enforcement of its rights hereunder is sought, the Agent shall have, in addition to all other rights

and remedies, the rights and remedies of a secured party under the UCC.

                37.    The Debtor is authorized to execute such documents and take all other

actions as may be necessary to release any Encumbrances of any kind against the Assets as such

Encumbrances may have been recorded or may otherwise exist, in accordance with the terms of

this Order.  Any Encumbrances, interests, liabilities, obligations, claims, charges and interests of

any kind asserted under laws, rules, regulations or governmental or court orders imposing a

stamp, transfer tax or similar tax arising from the transfer of the Assets to the Agent shall be filed

against the Debtor's estate and shall not be asserted against the Agent.  Pursuant to

sections 105(a) and 363 of the Bankruptcy Code, all persons and Governmental Units (as defined

in sections 101(27) and 101(41) of the Bankruptcy Code) are hereby enjoined from taking any

action against the Agent to recover any claim which such person or Governmental Unit has or

may assert against the Debtor (as such claims exist immediately prior to the closing).  The Agent

has not assumed or otherwise become obligated for any of the Debtor's liabilities.  Consequently,

all holders of liabilities retained by the Debtor is hereby enjoined from asserting or prosecuting

any claim, encumbrance or cause of action against the Agent to recover on account of any such

liabilities.  Pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities,

including, but not limited to, all parties holding any claim, encumbrance or cause of action

against the Debtor, its estate or its assets, the Debtor's employees, former employees and

members, administrative agencies, governmental departments, secretaries of state, federal, state

and local officials, including such officials maintaining any authority relating to environmental,

labor and health and safety laws, and its respective successors or assigns, are hereby permanently

and forever barred, restrained and enjoined from commencing or continuing in any manner any

action or other proceeding of any kind or the employment of any process or any act to collect,

offset or recover such claim, encumbrance or cause of action against the Agent, or that seeks to

impose liability upon the Agent or any affiliate, successor or assign thereof, or against the Assets

or the Additional Agent Merchandise under the laws of the United States, any state, territory or

possession thereof or the District of Columbia based, in whole or in part, directly or indirectly,

on any theory of law, including, without limitation, any theory of successor or transferee liability

or any liability for pre- or post-petition claim, encumbrance or cause of action against the Debtor

by reason of the disposition of the Assets and/or the Additional Agent Merchandise in the

manner contemplated by the Agency Agreement and this Order, including, without limitation,

pre- and post-petition claims, Encumbrances or causes of action of any federal, state or local

governmental entities, of any current or former employee for claims arising out of employment

and termination of employment, including, without limitation, claims for wages, bonuses,

commissions, accrued vacation, severance, continuation of coverage under COBRA, or pension,

welfare, fringe benefits or any other benefits of any kind including, without limitation,

obligations in respect of retiree medical coverage or benefits.

38.     Each and every federal, state, and local governmental agency or

department is hereby directed to accept any and all documents and instruments necessary and

appropriate to consummate the transactions contemplated by the Agency Agreement and this

Order.

39.     The provisions of this Order shall be self-executing, and neither the

Debtor nor the Agent shall be required to execute or file releases, termination statements,

assignments, consents, or other instruments in order to effectuate, consummate and implement

the provisions of this Order.  However, the Debtor and the Agent and each of their respective

officers, employees and agents are hereby authorized and empowered to take all actions and

execute and deliver any and all documents and instruments that either the Debtor or the Agent

deem necessary or appropriate to implement and effectuate the terms of the Agency Agreement

and  this Order.

40.     The Agent shall not be obligated to (i) continue or maintain in effect, or

assume any liability in respect of any employee pension, welfare, fringe benefit or any other

benefit plan, trust arrangement or other agreement to which the Debtor is a party or has any

responsibility therefor, including, without limitation, medical, welfare and pension benefits

payable after retirement or other termination of employment, or (ii) assume any responsibility as

a fiduciary, plan sponsor or otherwise, for making any contribution to, or in respect of the

funding, investment or administration of any employee pension plan or the termination of any

such plan, provided however that nothing in this Paragraph 40 shall abrogate any of the Agent's

obligations to pay any Expenses in accordance with the terms of the Agency Agreement.

## G.    Other Provisions

41.    Except as expressly provided in the Agency Agreement, the Agent shall

not assume, or in any way be liable or responsible for, any claim or liability against any of the

Debtor, whether known or unknown, whether asserted or unasserted, whether accrued or

unaccrued, whether contingent or not, whether at law or in equity or otherwise, whether existing

on the date hereof or arising thereafter, and whether relating to or arising out of the Debtor's

business, the Assets, any excluded assets or otherwise (including, without limitation, (x)

liabilities based on any successor liability theory and (y) liabilities relating to the pre-petition or

post-petition operation of the Debtor's business or the Assets (or the use of the Assets)). .  The

Agent shall have no successor liability whatsoever with respect to any Encumbrances or claims

of any nature that may exist against the Debtor (or any predecessor or affiliate of any of the

Debtor), including, without limitation, the Agent shall not be, or to be deemed to be: (i) a

successor in interest or within the meaning of any law, including any revenue, successor liability,

pension, labor, ERISA, bulk-transfer, products liability, tax or environmental law, rule or

regulation, or any theory of successor or transferee liability, antitrust, environmental, product

line, de facto merger or substantial continuity or similar theories; or (ii) a joint employer, co-employer or successor employer with the Debtor, and the Agent shall have no obligation to pay the Debtor's wages, bonuses, severance pay, vacation pay, WARN act claims (if any), benefits or any other payments to employees of the Debtor, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise, except as expressly set forth in the Agency Agreement.

42.     The Agent is a party in interest and, through and including completion of the Final Reconciliation, Agent shall be entitled to be heard on all issues in the Bankruptcy Case related to the Agency Agreement or the transactions contemplated thereby.

43.     Nothing contained in any plan confirmed in the Debtor's chapter 11 cases or any order of this Court confirming such plan or in any other order in this chapter 11 cases (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agency Agreement or the terms of this Order.

44.     The Agency Agreement and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court; provided, that such modification, amendment or supplement does not materially adversely affect the Debtor or its estate.

45.     Except with respect to any Governmental Unit (as to which the provisions of Paragraphs 21 and 22 shall apply), this Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to this Order or the Agency Agreement, including, but not limited

36

to, (i) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and signwalker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-deceptive manner, (ii) any claim of the Debtor, the landlords and/or the Agent for protection from interference with the Sale or the other transactions contemplated by the Agency Agreement, (iii) any other disputes related to the Sale or the other transactions contemplated by the Agency Agreement or the enforcement of the Agency Agreement, and (iv) to protect the Debtor and/or the Agent against any assertions of Encumbrances.  No such parties or person shall take any action against the Debtor, the Agent, the landlords at the Stores or the Sale or the other transactions contemplated by the Agency Agreement until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

46.     Notwithstanding Bankruptcy Rules 4001 and 6004, or any other law that would serve to stay or limit the immediate effect of this Order, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtor and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement.  For the avoidance of doubt, the Debtor is not subject to any stay in the implementation of the transactions contemplated by the Agency Agreement.

47.     Any and all bulk sale laws, to the extent applicable, are hereby waived since creditors are protected by the notice provided by the Sale Motion and the jurisdiction of the Court.

48.     This Order constitutes an authorization of the conduct of the Debtor and the Agent in connection herewith.

49.     To the extent that anything contained in this Order explicitly conflicts with a provision in the Agency Agreement or the GOB Sale Guidelines, this Order shall govern and control.

50.     In the event Merchant notifies Agent of its intention to draw on the Letter of Credit, Agent shall be entitled to an emergency hearing by this Court sufficient to determine whether such draw is permitted under the terms of this Agreement prior to the occurrence of such draw.


Dated: White Plains, New York
        February 4, 2016

                                    /s/Robert D. Drain
                                    UNITED STATES BANKRUPTCY JUDGE