UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Joyce Leslie, Inc.,<br><br>　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 16- 22035 (RDD) |

# ORDER (A) AUTHORIZING CONDUCT OF SECOND AUCTION RELATING TO THE SALE OF THE DEBTOR'S LEASES AND INTELLECTUAL PROPERTY AND AUTHORIZING DEBTOR'S ENTRY INTO A PROPOSED STALKING HORSE SELECT LEASE PURCHASE AGREEMENT WITH MADRAG, (B) APPROVING REVISED BIDDING PROCEDURES AND AUCTION, AND (C) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF

Upon the bifurcated motion of Joyce Leslie, Inc. (the "Debtor")[1] seeking entry of an Order (1) (a) authorizing entry into that certain Stalking Horse Asset Purchase Agreement (the "Select Lease Purchase Agreement") dated January 14, 2016 with 618 Main Street Corp. an affiliate of Madrag/10 Spot Clothing, Inc. (herewith, "Madrag"), annexed hereto as **Exhibit 2**, which provides for the sale of a minimum of 12 designated leases, and up to a total of 20 designated leases, following completion of the store liquidation sales, subject to higher and better offers, (b) authorizing the related revised bidding procedures, including an auction on February 16, 2016 to consider higher and better qualified bids for the sale of the Debtor's leases, and approving stalking horse protection, and (c) scheduling a sale hearing and approving notice thereof, and (2) approving the auction results and authorizing the assumption and assignment of the leases and sale of the Assets to the party making the highest and best bid; and there being due and sufficient notice of the Debtor's request for the relief granted herein; and there being no objections to such relief; and upon the record of the hearing held by the Court on such request on

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion or the Select Lease Purchase Agreement.

February 9, 2016 (the "Bidding Procedures Hearing") and the record of this case; now, therefore, good and sufficient cause appearing,

**IT IS HEREBY FOUND AND DETERMINED THAT**[2]:

  A. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O) that the Court may decide by final order. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

  B. This Order, as it relates only to the Select Lease Purchase Agreement with Madrag, constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a) with respect to the approval of the Select Lease Purchase Agreement as a Stalking Horse Contract and related Bidding Procedures, and the approval of the Debtor's entry into the Select Lease Purchase Agreement with Madrag, subject to higher and better offers and the Bidding Procedures.

  C. The notice of Motion and Bidding Procedures Hearing constitutes due and sufficient notice thereof.

  D. Any remaining objections to the Motion with respect to the relief requested therein have been deferred, withdrawn, waived, or settled, and all reservations of rights included in such objections are preserved, to the extent relevant, to the Sale Hearing.

---

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E. The Debtor has articulated good and sufficient reasons for, and the best interests of the Debtor will be served by, this Court approving the Select Lease Purchase Agreement with Madrag as a Stalking Horse Contract.

F. The form of the Select Lease Purchase Agreement is approved and is appropriate and reasonably calculated under the circumstances to enable the Debtor and other parties-in-interest to easily compare and contrast the differing terms of the bids to be presented at the Auction.

G. The Bidding Procedures, substantially in the form attached hereto as Exhibit 1, are fair, reasonable and appropriate under the circumstances and are designed to maximize the Debtor's recovery with respect to the sale of the Assets, including its store leases and intellectual property.

H. Under the circumstances, timing and procedures set forth herein, in the Motion and in the Select Lease Purchase Agreement, the Debtor has demonstrated compelling and sound business justifications for entry into the Select Lease Purchase Agreement and its terms, including, without limitation, the Expense Reimbursement Fee to Madrag as provided in Article 9, Section 3 of the Select Lease Purchase Agreement (the "Expense Reimbursement Fee").

I. The Expense Reimbursement Fee (a) was negotiated by the Debtor and Madrag as the Stalking Horse in good faith and at arm's-length, (b) is fair, reasonable and appropriate under the circumstances, (c) is an actual and necessary cost and expense of preserving the Debtor's estate and (d) is a reasonable inducement for, and a condition of,

3

Madrag's offer to serve as the Stalking Horse for the sale of Leases. The Expense Reimbursement Fee is commensurate with the real and substantial benefits conferred upon the Debtor's estate by Madrag, as the Stalking Horse, to encourage competitive bidding for the Assets and constitutes actual and necessary costs and expenses incurred by the Debtor in preserving the value of its estate within the meaning of section 503(b) of the Bankruptcy Code.

    J. Entry into the Select Lease Purchase Agreement with Madrag, as the Stalking Horse, is in the best interests of the Debtor, its estate, creditors, and other parties-in-interest and, based on the information set forth in the Motion and presented to the Court, is an appropriate exercise of the Debtor's business judgment. The Select Lease Purchase Agreement will enable the Debtor to secure an adequate consideration floor for the Auction and will provide a clear benefit to the Debtor's estate and all other parties-in-interest.

    K. The proposed Select Lease Purchase Agreement does not require the appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) of the Bankruptcy Code.

    L. No other or further notice shall be required except as set forth in the Bidding Procedures. No finding or ruling is made in this Bidding Procedures Order as to the adequacy of any proposed transaction, it being intended that such approval will be sought by the Debtor at the Sale Hearing.

    M. No person or entity, other than Madrag as the Stalking Horse, shall be entitled to any expense reimbursement, break-up fee, "topping," termination or other similar fee or payment in connection with the sale of the Assets.

**IT IS HEREBY ORDERED THAT:**

1. The procedural relief requested in the Motion is GRANTED to the extent set forth herein.

2. The Bidding Procedures, substantially in the form annexed hereto as Exhibit 1, are incorporated herein by reference and are hereby approved.

**3.** The Bid Deadline is **February 11, 2016, at 5:00 P.M.**, unless extended by the Debtor in its discretion for good cause, in consultation with the Official Committee of Unsecured Creditors (the "**Committee**").

4. The Auction for the sale of the Debtor's store leases and intellectual property shall be held on **February 16, 2016, at 10:00 A.M.** at the offices of Cooley LLP, The Grace Building, 1114 Avenue of the Americas, New York, NY 10036, or such other location reasonably determined by the Debtor and Committee in advance of the Auction on reasonable notice to Qualified Bidders.

5. The Sale Hearing shall be held on **February 17, 2016, at 10:00 A.M.**, at which time the Court will consider approval of the Sale of the Leases and Intellectual Property to the Successful Bidder(s), approval of the Back-up Bidder(s), and confirm the results of the Auction.

6. To the extent not already done, Counterparties to the Assumed Contracts (each a "**Counterparty**," and together, the "**Counterparties**"), subject to any Counterparty's right to object to adequate assurance for future performance under section 365 of the Bankruptcy Code, must file and serve any objection to the assumption and assignment of any Assumed

5

Contract so that such objection is received on or before **February 17, 2016 at 10:00 a.m.**, by: (a) the proposed counsel to the Debtor, Goldberg Weprin, Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, New York 10036, Attn: Kevin J. Nash; (b) counsel for the Official Committee of Unsecured Creditors, Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036, Attn: Jay R. Indyke and Seth Van Aalten; (c) the U.S. Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Susan Golden; and (d) counsel to Madrag, Rosen & Associates, 747 Third Avenue, New York, New York 10017, Attn: Nancy Kourland (the "**Bid and Objection Notice Parties**"), with a copy to the Court's chambers.

7. The deadline to file objections to Cure Costs was February 4, 2016, at 5:00 p.m. Accordingly, any Counterparty that failed to timely file an objection to the Cure Cost set forth in the Cure Notice is now precluded from objecting to the Cure Costs and from asserting any additional cure or other amounts against the Debtor, its estate, and the Successful Bidder with respect to the Assumed Contract to which it is a Counterparty arising as of the date of the Cure Costs deadline. For the avoidance of doubt, no executory contract or unexpired lease will be assumed or assumed and assigned until and unless a transaction closes that proposes assumption and assignment of such executory contract and/or unexpired lease after approval by the Court.

8. Undisputed or agreed-upon Cure Costs shall be paid upon the assumption and assignment of a lease. In the event that the Debtor and the Counterparty cannot consensually resolve any Counterparty's objection to the Cure Cost, the Debtor, the Successful Bidder or any

other assignee, as applicable, will segregate any disputed cure amounts pending the resolution of any such disputes by this Court or mutual agreement of the parties.

9. Proposed Bidders shall transmit adequate assurance information to the Debtor, Committee, Counterparties, and their counsel (if known), via e-mail if possible, on or before **February 11, 2016, at 5:00 P.M.** Any Counterparty who receives an Adequate Assurance Package shall be required to keep the information confidential to the extent set forth in the Bidding Procedures.

10. All other objections to approval of a particular transaction, including the Sale of any applicable Assets free and clear of liens, claims and encumbrances and the Approval Order, or on adequate assurance grounds, must be in writing, state the basis of such objection with specificity and be filed with this Court in compliance with the Bankruptcy Rules and the Local Rules and served so as to be received by the Bid and Objection Notice Parties, with a copy to the Court's chambers, on or before **10:00 a.m. (Eastern Standard Time) on February 17, 2016**.

11. The Sale Hearing may be adjourned from time to time without further notice other than by announcement of the adjournment in open Court or the entry of a notice of adjournment on the docket.

12. The Debtor is authorized to take any and all actions contemplated by the Bidding Procedures prior to the Auction and Sale Hearing.

13. Within one business day after entry of this Order, the Debtor shall serve a copy of this Order, together with all the exhibits thereto, upon (a) counsel for the Official

Committee of Unsecured Creditors, Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036, Attn: Jay R. Indyke and Seth Van Aalten, (b) the U.S. Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Susan Golden, (c) all of the Debtor's landlords and any parties known to assert an interest in the Debtor's intellectual property, (d) any parties known by the Debtor to be potentially interested in participating in the proposed auction, and (e) any such other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Bankruptcy Rule for the Southern District of New York 9013-1(b).

14. The Court shall retain jurisdiction to hear and determine all matters arising from implementation of this Order.

Dated: White Plains, New York
       February 9, 2016

                              /s/Robert D. Drain
                              ROBERT D. DRAIN
                              UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT 1**

Bidding Procedures

Kevin J. Nash
Evan M. Lazerowitz
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, New York 10036
Telephone: (212) 221-5700
Facsimile:  (212) 335-4501

*Proposed Counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Joyce Leslie, Inc.<br><br>Debtor. | Chapter 11<br><br>Case No. 16- 22035 (RDD) |

**BIDDING PROCEDURES**

Joyce Leslie, Inc. (the "Debtor") is offering for sale 42 of its commercial store leases (the "Leases"), as well as its trademarks, domain name and intellectual property (the "Intellectual Property") (collectively, the "Assets").  You may bid on any one or any combination of the Assets or all of the Assets.

**ANY PARTY INTERESTED IN BIDDING ON THE ASSETS SHOULD CONTACT THE FOLLOWING PERSONS:**

Joyce Leslie, Inc.
170 West Commercial Avenue
Moonachie, New Jersey 07074
Attn: Lee Diercks
(908) 431-2122
ldiercks@clearthinkinggrp.com

with a copy to:

Kevin J. Nash, Esq.
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, New York 10036
(212) 221-5700
knash@gwfglaw.com

**A.    Sale**

The Debtor seeks to sell via assumption and assignment its 42 store Leases, in combination or separately, together with its Intellectual Property pursuant to the Bidding Procedures as set forth herein.

**B.    Select Lease Purchase Agreement**

With respect to the Debtor's real property leases, the Debtor has already entered into a Stalking Horse Asset Purchase Agreement with 618 Main Street Corp. an affiliate of Madrag/10 Spot Clothing, Inc. (herewith, "**Madrag**"), dated January 14, 2016, (the "**Select Lease Purchase Agreement**").  Pursuant to the Select Lease Purchase Agreement, Madrag will buy a minimum of 12 designated leases for $720,000, and up to a total of 20 designated leases, with additional consideration of $60,000 for each additional lease, in addition to the payment of cure costs.

The Select Lease Purchase Agreement is subject to competitive bidding as set forth herein and approval by the Bankruptcy Court.  The Debtor may consider bids for all or a portion of the Leases in a single bid from a single bidder, or multiple bids from multiple bidders, including bids on each individual Lease.

**C.    The Bidding Procedures**

*1.    Provisions Governing Qualifications of Bidders*

Unless extended by the Debtor in its discretion for good cause, in consultation with the Creditor's Committee, prior to **5:00 p.m. prevailing Eastern time on February 11, 2016** (the "**Bid Deadline**"), each entity, other than the Stalking Horse, that wishes to participate in the bidding process (a "**Potential Bidder**") must deliver the following to the Notice Parties (defined below):

(a)    a written disclosure of the identity of each entity, including involvement in any joint venture, that will be bidding (or participating in a bid) on the Assets;

(b)    adequate assurance information, including (a) adequate information (in the Debtor's reasonable business judgment) about the financial condition of the Potential Bidder, such as federal tax returns for the previous two years, a current financial statement, and/or current bank account statements; and (ii) information demonstrating (in the Debtor's reasonable business judgment) that the Potential Bidder has the financial capacity to, inter alia, consummate the proposed assumption and assignment of Assumed Contracts;

(c)    to the extent relevant, an executed confidentiality agreement in form and substance satisfactory to the Debtor; and

2

    (d)    a *bona fide* non-binding letter of intent or expression of interest, which shall describe, among other things, the cash, financing commitments, or other sources of consideration that the Potential Bidder will use to consummate the proposed transaction, and any conditions to consummating the proposed transaction including any required internal approvals, syndication requirements, or other contingencies or approvals.

As soon as reasonably practicable after the Debtor receives a bid, but no later than February 12, 2016, at 12:00 p.m., the Debtor shall distribute a copy of such bid to counsel to Madrag, as the Stalking Horse, and the landlord (and its counsel, if known) of any store which is proposed to be assigned, by e-mail.

A Potential Bidder that the Debtor determines in its reasonable business judgment, after consultation with the Official Committee of Unsecured Creditors (the "**Committee**") is likely (based on availability of financing, experience and other considerations) to be able to consummate the sale, will be deemed a "**Qualified Bidder**." The Debtor will provide access to due diligence only to those parties it believes, in the exercise of its reasonable business judgment are pursuing a proposed transaction in good faith.

As promptly as practicable after a Potential Bidder delivers the materials required above, the Debtor, in consultation with the Committee, will make its determination and notify the Potential Bidder if such Potential Bidder is a Qualified Bidder.

### 2. *Due Diligence*

The Debtor will afford any Qualified Bidder such due diligence access or additional information as the Debtor deem appropriate, in its reasonable discretion. Any due diligence materials provided to any bidder shall be made available to bidders and Madrag, as the Stalking Horse in the data room, subject to such protections as the Debtor determines in its reasonable business judgment.

The due diligence period will extend through and including the Bid Deadline; *provided*, *however*, that any Qualified Bid (defined below) submitted will be irrevocable until the selection of the Successful Bidder (defined below) and the Back-Up Bidder (defined below) as described herein.

### 3. *Provisions Governing Qualified Bids*

A bid will be considered a qualified bid only if the bid is submitted by a Qualified Bidder and complies with all of the following (a "**Qualified Bid**") as determined by the Debtor in its business judgment, in consultation with the Committee:

    (a)    states with specificity which Leases or other assets the Qualified Bidder intends to purchase, in cash, (which shall consist of at least the assets described in the non-binding letter of intent submitted by such Qualified Bidder) and the liabilities and obligations to be assumed by the Qualified Bidder upon the terms and conditions set forth in an agreement, and to the extent relevant, based on the form of the Select Lease Purchase Agreement

3

          submitted by the Stalking Horse, as modified to reflect such Qualified Bidder's proposed transaction or in an asset purchase agreement (an "**Alternative Transaction Agreement**");

(b)    disclose any connection or agreements with the Debtor, Madrag, as the Stalking Horse, any other known Potential Bidder and/or any officer, director or equity security holder of Joyce Leslie, Inc.;

(c)    includes a signed writing that the Qualified Bidder's offer is irrevocable until the selection of the Successful Bidder and the Back-Up Bidder; *provided that* if such Qualified Bidder is selected as the Successful Bidder or Back-Up Bidder, its offer will remain irrevocable until the closing of the Sale;

(d)    contains written confirmation that there are no conditions precedent to the Qualified Bidder's ability to enter into a definitive agreement, including, but not limited to, any additional due diligence, inventory evaluation or financing conditions, and that all necessary approvals have been obtained prior to the date of submission of the bid;

(e)    includes evidence, in form and substance reasonably satisfactory to the Debtor, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Select Lease Purchase Agreement or Alternative Transaction Agreement;

(f)    includes a duly authorized and executed copy of the Select Lease Purchase Agreement or Alternative Transaction Agreement (including all exhibits and schedules thereto), together with copies marked to show any amendments and modifications to (a) the Select Lease Purchase Agreement and (b) the proposed Approval Order;

(g)    includes written evidence of a firm, irrevocable commitment for financing, or other evidence of ability to consummate the Sale, that will allow the Debtor to make a reasonable determination as to the Qualified Bidder's financial and other capabilities to consummate the Sale;

(h)    includes an acknowledgement and representation that the Qualified Bidder: (a) has had an opportunity to conduct any and all required due diligence regarding the Assets prior to making its offer; (b) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the relevant assets; (c) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied, regarding the relevant assets or the completeness of any information provided except as expressly stated in the Select Lease Purchase Agreement or Alternative Transaction

4

        Agreement; and (d) is not entitled to any expense reimbursement, break-up fee or similar type of payment in connection with its bid;

(i)     is accompanied by a good faith deposit in the form of a wire transfer (to a bank account specified by the Debtor), certified check or such other form acceptable to the Debtor, in an amount equal to ten percent of the value of such Qualified Bidder's Qualified Bid (as quantified by the Debtor) (the "**Deposit**"), or such other amount as required by the Debtor and the Committee;

(j)     is accompanied by a letter (a) stating with specificity the type of assets such Qualified Bidder wishes to bid on and the liabilities and obligations to be assumed by such Qualified Bidder, (b) specifying all material terms of the bid that are substantially the same as or better than those of the Stalking Horse bid, to the extent the bid is on the same set of assets as the Stalking Horse bid, (c) stating that its offer is a *bona fide* offer that it intends to consummate if it is selected as the Successful Bidder and (d) stating that such Qualified Bidder has not engaged in any collusion with respect to the bidding process;

(k)     contains such other information as is requested by the Debtor in its business judgment; and

(l)     is received prior to the Bid Deadline.

    The Debtor will notify all Qualified Bidders by the start of the Auction as to whether or not *any* bids constitute Qualified Bids with respect to any of the assets and whether *such* Qualified Bidder's bid constitutes a Qualified Bid.  The Debtor retains the right, upon consultation with the Committee, to waive or modify the terms of the Bidding Procedures when determining which bids (other than the Select Lease Purchase Agreement, which shall constitute a Qualified Bid) may be deemed Qualified Bids.  As soon as reasonably practicable after the Debtor determines that a bid is a Qualified Bid, the Debtor shall distribute a copy of such bid to counsel to the Stalking Horse and any landlord (and its counsel) as soon as practical, but no later than twenty four (24) hours following such determination.

    Madrag, as the Stalking Horse shall be deemed a Qualified Bidder for all purposes with respect to any assets proposed to be acquired by the Stalking Horse bid and shall not be required to comply with the requirements in Section C.3 hereof (including, without limitation, the requirement of delivery of a Deposit).  Madrag shall provide its adequate assurance package to all landlords whose leases may be assumed and assigned no later than February 11, 2016, at 5:00 p.m.

    4. *Bid Deadline*

    A Qualified Bidder that desires to make a bid must deliver written copies of its bid to the following parties (collectively, the "**Notice Parties**") so as to be received not later than the Bid Deadline of **5:00 p.m. prevailing Eastern time on February 11, 2016**:  (a) the proposed counsel to the Debtor,  Goldberg Weprin, Finkel Goldstein LLP, 1501 Broadway, 22nd

5

Floor, New York, New York 10036, Attn: Kevin J. Nash; (b) counsel for the Official Committee of Unsecured Creditors, Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036, Attn: Jay R. Indyke and Seth Van Aalten; (c) the U.S. Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Susan Golden; and (d) counsel to Madrag, Rosen & Associates, 747 Third Avenue, New York, New York 10017, Attn: Nancy Kourland.

The Bid Deadline may be extended by the Debtor in consultation with the Creditor's Committee.

5. *Evaluation of Competing Bids*

A Qualified Bid will be valued based upon several factors as determined by the Debtor in its business judgment including, without limitation: (a) the amount of such bid; (b) the assets included in such bid, (c) the risks and timing associated with consummating such bid; (d) any proposed revisions from the Select Lease Purchase Agreement and/or the Approval Order; and (e) any other factors deemed relevant by the Debtor in its reasonable business judgment, upon consultation with the Committee.

6. *No Auction if No Qualified Bids*

If the Debtor receives no more than one Qualified Bid (including the Stalking Horse bid) on each asset, the Debtor may not hold the Auction and may request at the Sale Hearing (defined below) that the Bankruptcy Court approve the Select Lease Purchase Agreement with the Stalking Horse.

7. *Auction Process*

If the Debtor receives more than one Qualified Bid for the Assets (including the Stalking Horse bid), the Debtor will conduct an auction, which will be transcribed, at **10:00 a.m. prevailing Eastern Time on February 16, 2016** (the "**Auction**") **at the offices of the proposed counsel for the Official Committee of Unsecured Creditors, Cooley LLP, The Grace Building, 1114 Avenue of the Americas, New York, NY 10036**, or such other location as will be timely communicated to all entities entitled to attend the Auction. The Auction will be conducted in accordance with the following procedures:

(a) Only the Debtor, the Committee, any Qualified Bidder that submitted a Qualified Bid, the advisors to each of the foregoing, and any interested landlords or creditors will be entitled to attend the Auction, and only the Qualified Bidders will be entitled to make any bids at the Auction.

(b) Each Qualified Bidder will be required to confirm that it has not engaged in any collusion with respect to the bidding at the Auction.

(c) Prior to the Auction, each Qualified Bidder that timely submitted a Qualified Bid must inform the Debtor whether it intends to attend the Auction; *provided that* in the event a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid nevertheless will

6

        remain fully enforceable until the date of the selection of the Successful Bidder and the Back-Up Bidder.

(d) Prior to the Auction, the Debtor, in its reasonable discretion, after consultation with the Committee, will determine which bid or combination of bids from among the Qualified Bids is the highest or best bid for an individual Lease or group of Leases, and the Intellectual Property (the "**Highest or Best Bid(s)**").

(e) At the Auction, bidding for any part of the Assets will start at the purchase price and terms proposed in the applicable Baseline Bid(s). The Debtor, after consultation with the Committee, will announce the bidding increments for bids (the "**Minimum Overbid**") at the start of the Auction, as applicable. The Debtor shall, after submission of each bid, promptly inform each participant which bids reflect, in the Debtor's view, the highest or otherwise best offer for the applicable assets.

(f) The Debtor, after consultation with the Committee, may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction; *provided that* such rules are (a) not inconsistent with these Bidding Procedures, the Bankruptcy Code or any order of the Bankruptcy Court entered in these cases and (b) disclosed to each Qualified Bidder at or prior to the Auction.

        All Qualified Bidders at the Auction and the Stalking Horse shall be deemed to have consented and submitted to the core jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to the marketing or solicitation process, the Auction and the construction and enforcement of the Qualified Bidder's contemplated transaction documents, as applicable.

8. *Selection of Successful Bid*

        At or prior to the conclusion of the Auction, the Debtor, in consultation with the Committee, will review and evaluate each Qualified Bid in accordance with these Bidding Procedures and determine in its reasonable business judgment which offer is the highest or otherwise best offer from among the Qualified Bids for the Assets submitted at the Auction (each, a "**Successful Bid**" and the bidder(s) making such bid, the "**Successful Bidder**"), and communicate to the other Qualified Bidders the identity of the Successful Bidder and the details of the Successful Bids. A Successful Bid must include an agreement to payment of the Expense Reimbursement Fee, or a portion thereof, to the extent applicable. The determination of the Successful Bids by the Debtor at the conclusion of the Auction will be final, subject only to approval by the Bankruptcy Court.

        As soon as reasonably practicable after conclusion of the Auction, (a) the Successful Bidder will complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions of the Successful Bids and (b) the Debtor will file a notice (the "**Auction Results Notice**") with the Bankruptcy Court identifying

7

the Successful Bidder and the Successful Bids, which will include copies of the Select Lease Purchase Agreement or applicable Alternative Transaction Agreements and the proposed form of Approval Order, in each case in the forms agreed to between the Debtor and the Successful Bidder marked to show all amendments and modifications made to the Select Lease Purchase Agreement submitted by the Stalking Horse (the "**Successful Bidder Agreement**") and proposed Approval Order.

The Debtor will sell the Assets to the Successful Bidder(s) pursuant to the terms of the Successful Bid(s) as set forth in each Successful Bidder Agreement if and as approved by the Bankruptcy Court at the Sale Hearing. The presentation of a particular Qualified Bid to the Bankruptcy Court as a Successful Bid for approval does not constitute the Debtor's acceptance of the Qualified Bid. The Debtor will be deemed to have accepted a Qualified Bid as a Successful Bid only after such bid has been approved by the Bankruptcy Court.

### 9. *Return of Deposits*

All Deposits will be returned to each Qualified Bidder not selected by the Debtor as the Successful Bidder or the Back-Up Bidder no later than the closing of the Sale.

### 10. *Forfeit of Deposits*

A Successful Bidder that breaches any of its obligations under the applicable Successful Bidder Agreement shall forfeit its Deposit, which shall become property of the Debtor's estate without any further order of the Bankruptcy Court. The forfeiture of the Deposit shall be in addition to any other rights, claims and remedies that the Debtor and its estate may have against such Successful Bidder.

### 11. *Back-Up Bidder*

If an Auction is conducted, the Qualified Bidder(s) with the second highest or otherwise best Qualified Bid at the Auction for the applicable assets, as determined by the Debtor in the exercise of its business judgment, will be required to serve as a back-up bidder (a "**Back-Up Bidder**") and keep such bid open and irrevocable until the date that is seven business days after the completion of the Store Closing Sales; provided that the Stalking Horse shall be required to serve as Back-Up Bidder only subject to the terms and conditions set forth in its bid (including, without limitation, any outside dates, milestones or termination events). The Auction Results Notice filed by the Debtor shall also include the identity of any Backup Bidder and the Backup Bids. Following the Sale Hearing, if the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of such Successful Bidder, the applicable Back-Up Bidder will be deemed to be the new Successful Bidder for the applicable assets, and the Debtor will be authorized but not required, to consummate the Sale with such Back-Up Bidder without further order of the Bankruptcy Court. The Back-Up Bidder other than Madrag shall be required to close within three (3) business days following receipt of notice from the Debtor of the Successful Bidder's failure to close.

**D.	The Sale Hearing**

The Debtor will seek entry of the Approval Order from the Bankruptcy Court at a hearing (the "**Sale Hearing**") on February 17, 2016, at 10:00 a.m., to request the Bankruptcy Court approve and authorize the Sale on terms and conditions determined in accordance with these Bidding Procedures, the Auction and the executed form of Successful Bidder Agreement.

**E.	Credit Bidding**

Any credit bid accepted by the Debtor as a Qualified Bid must provide for the payment in cash of the Expense Reimbursement Fee, or a portion thereof, if applicable.

9