# **EXHIBIT 2**

**Select Lease Purchase Agreement**

## ASSET PURCHASE AGREEMENT

This **ASSET PURCHASE AGREEMENT** (this "**Agreement**"), made this 14th day of January, 2016, is by and between Joyce Leslie, Inc., a New York corporation, as debtor and debtor in possession ("**Seller**" or the "**Debtor**"), and 618 Main Street Corp., a New Jersey corporation having a principal place of business at 5601 West Side Avenue, West Bergen, NJ 07047 ("**Buyer**").

## W I T N E S S E T H:

**WHEREAS**, on January 9, 2016 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11, title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), Case No. 16-22035 (RDD);

**WHEREAS**, contemporaneously herewith, the Debtor intends to file a motion (the "Motion") seeking, among other things, the entry of an order (the "**Bid Procedures Order**") of the Bankruptcy Court, pursuant to sections 105, 363 and 365 of the Bankruptcy Code, approving notice and bid procedures (the "**Bid Procedures**") and scheduling an auction and the entry of the Sale Order (as defined below) pursuant to the terms and conditions set forth herein;

**WHEREAS**, on the terms and subject to the conditions set forth in this Agreement, Buyer desires to purchase from Seller, and Seller desires to sell to Buyer, the Acquired Assets (including the Designated Leases (as defined below) free and clear of all liens, claims, and encumbrances pursuant to sections 105, 363 and 365 of the Bankruptcy Code; and

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

### ARTICLE 1. PURCHASE AND SALE OF ASSETS

Section 1. <u>Sale of Assets</u>. Subject to entry of the Sale Order (defined in Article 9, Section 2) and the terms and conditions of this Agreement, at the Closing, Seller shall sell, transfer, assign, and deliver to Buyer, and Buyer agrees to buy, acquire, assume, and accept from Seller, all of Seller's right, title, and interest in and to certain assets of Seller (the "Acquired Assets"), free and clear of all liens, mortgages, pledges, charge, security interests, interests under conditional sale, capital lease or title retention agreements, encumbrances, easements, options, rights of first refusal, restrictions, judgments, claims, demands, successor liability, defects or other adverse claims, interests or liabilities of any kind or nature (whether known or unknown, accrued, absolute, contingent, or otherwise) in, on or arising from the Acquired Assets pursuant to sections 105, 363, and 365 of the Bankruptcy Code. The Acquired Assets shall mean the following property of Seller: (i) twelve (12) of the Debtor's commercial real property leases to be designated by the Buyer (each, a "**Designated Lease**," and collectively, the "**Designated Leases**") among the twenty (20) commercial real property leases identified on **Exhibit "A"** hereto; (ii) the Additional Designated Leases (as defined below); (iii) the existing furniture, fixtures and equipment located in the store premises subject to the Designated Leases and the Additional Designated Leases, and (iv) the Debtor's trade names, domain names, website, and all

rights including, but not limited to, mailing lists and any intellectual property, and social media associated with the "Joyce Leslie" tradename and trademarks. Seller is not selling, assigning, transferring, or delivering, and Buyer is not purchasing or assuming, any of the Debtor's other assets including, but not limited to, cash, cash equivalents, inventory, furnishings, fixtures, and equipment located in any of the Debtor's stores located in premises that are not subject to a Designated Lease, its corporate office, or distribution center or any of the Debtor's causes of action under chapter 5 of the Bankruptcy Code.

(a) <u>Limited Assumption of Liabilities</u>. Buyer shall not assume and shall not be liable for any of the Debtor's liabilities, claims (as such term is defined in section 101(5) of the Bankruptcy Code) against the Debtor, including, without limitation, taxes, owed, accrued, or accruing prior to or after the Closing Date except for the obligations and liabilities that become due and owing after the Closing Date pursuant to the terms of the Designated Leases; provided, however, that Buyer agrees to pay certain of the amounts due and owing to cure the Debtor's monetary defaults under the Designated Leases, as provided below.

Section 2.   <u>Sale and Assignment of Additional Leases, Furniture and Fixtures</u>. The Buyer has the right, but not the obligation, to purchase and assume up to eight (8) additional leases listed on Exhibit A hereto under which the Debtor is the tenant (each, an "**Additional Designated Lease**," and collectively, the "**Additional Designated Leases**"), together with the furniture and fixtures located in the store premises subject to such lease(s).

Section 3.   <u>Designation of Leases</u>. No later than 5 business days prior to the date of the auction sale of the Debtor's property to be scheduled by the Bankruptcy Court pursuant to section 363 of the Bankruptcy Court, Buyer shall identify in writing the twelve (12) Designated Leases and any Additional Designated Lease it wishes to purchase and assume (the "**Scheduled Leases**"). Once identified by Buyer, the Scheduled Leases shall irrevocably become Acquired Assets.

Section 4.   <u>Seller's Actions with Respect to Leases</u>.

(a) <u>Seller's Obligation to Maintain Leases</u>. From and after the date of the execution of this Agreement, Seller shall not reject or modify or amend (or attempt to modify or amend) the terms of the Designated Leases set forth in Exhibit "A" hereto to which Seller is a party. Seller shall provide timely and proper written notice of its motion seeking entry of the Sale Order (as defined below) to all counter-parties to the Scheduled Leases and take all other actions necessary to cause the Scheduled Leases to be assumed and sold by Seller and assigned and purchased to Buyer (or Buyer's designee) at Closing pursuant to section 365 of the Bankruptcy Code.

(b) <u>Assignment of Leases</u>. At the Closing, Seller shall, pursuant to the Sale Order and the Assignment and Assumption Agreement and other transfer and assignment documents reasonably requested by Buyer, assume and sell and assign to Buyer (or Buyer's designee) (in either case, the consideration for which is included in the Purchase Price), all Scheduled Leases.

Section 5.   <u>Cure Payments</u>. Buyer shall pay at the Closing the rent, additional rent, and all other amounts due under the Scheduled Leases for the period up to and including the

2

Petition Date, pursuant to section 365(b)(1) of the Bankruptcy Code (the "Cure Costs"). Not later than five business days prior to the Closing Date, Seller shall deliver to Buyer a detailed calculation of the Cure Costs.

Section 6.   Designation of Assignees. The Buyer may designate one or more separate entities that are wholly owned by the Buyer as the specific assignee(s) of the Scheduled Leases.

Section 7.   Adequate Assurance. Buyer shall provide financial information and otherwise cooperate with Seller in providing adequate assurances of future performance with respect to the Scheduled Leases; provided, however, Buyer acknowledges that Seller cannot assign any of the Scheduled Leases absent Bankruptcy Court approval.

## ARTICLE 2. CONSIDERATION

Section 1.   Consideration. The aggregate consideration for the sale and transfer of the twelve (12) Designated Leases, the existing furniture, fixtures and equipment located in the store premises subject to the Designated Leases, and the IP is the sum of (i) SEVEN HUNDRED AND TWENTY THOUSAND dollars ($720,000) in cash plus (ii) an amount equal to the Cure Costs for the twelve (12) Designated Leases as set forth in **Exhibit "B"** hereto (the "**Purchase Price**"). The Purchase Price shall be payable and deliverable at the Closing.

Section 2.   Deposit. Concurrently with the execution and delivery of this Agreement, Buyer shall deliver to Seller's counsel a deposit equal to SEVENTY TWO THOUSAND dollars ($72,000) (the "**Deposit**"), to be held by Seller's counsel in a separate segregated account in accordance with the terms and provisions of this Agreement. If this Agreement is terminated, the Deposit shall be disbursed in accordance with Article 8. If the Closing occurs, the Deposit shall be applied (with interest if any) to payment of the Purchase Price.

Section 3.   Additional Consideration. The Purchase Price shall be increased by SIXTY THOUSAND DOLLARS ($60,000) for each Additional Designated Lease, together with the furniture and fixtures located in the store premises subject to such lease(s), plus the Cure Cost associated with each Additional Designated Lease, such that the maximum purchase price for the Acquired Assets, in the event that all twenty (20) leases become Scheduled Leases, shall be $1.2 million plus the Cure Costs.

## ARTICLE 3. CLOSING AND DELIVERIES

Section 1.   Closing. The consummation of the transactions contemplated hereby (the "**Closing**") shall take place no earlier than seven (7) business days after Seller has provided buyer with written notice that Seller, or its agent, has completed the liquidation sale(s) of the Debtor's inventory in accordance with an order of the Bankruptcy Court (the "**Liquidation Order**"), or as otherwise may be agreed to by the parties hereto (the "**Closing Date**"), at the offices of Sellers' counsel, or at a place otherwise agreed upon by the parties, time being of the essence.

Section 2.    Seller's Deliveries. At the Closing, Seller shall deliver to Buyer:

(a)    bills of sale for the Acquired Assets and related Assumption and Assignment Agreements, and other customary instruments of transfer and conveyance necessary to effect the sale, transfer, and assignment of the Acquired Assets to Buyer that are consistent with the terms of this Agreement and reasonably satisfactory in form and substance to counsel for Seller and Buyer;

(b)    possession of the Acquired Assets (to the extent physically deliverable), including each of the premises subject to the Scheduled Leases broom clean, vacant, and free of any occupant and tenancies; and

(c)    a certified copy of the Sale Order as entered on the docket of the Debtor's bankruptcy case, in form and substance reasonably satisfactory to counsel for Buyer authorizing the transfer of the Acquired Assets to Buyer as set forth herein free and clear of any liens, mortgages, pledges, charge, security interests, interests under conditional sale, capital lease or title retention agreements, encumbrances, easements, options, rights of first refusal, restrictions, judgments, claims, demands, successor liability, defects or other adverse claims, interests or liabilities of any kind or nature (whether known or unknown, accrued, absolute, contingent, or otherwise)

Section 3.    Buyer's Deliveries. At the Closing:

(a)    Buyer shall pay to Seller the Purchase Price (less the Deposit) by wire transfer of immediately available funds in accordance with wire instructions provided by Seller.

Section 4.    Assumption and Assignment Agreements. The parties shall execute and deliver to each other customary assumption and assignment agreements (the "Assumption and Assignment Agreements"), pursuant to which Seller assumes and assigns each Scheduled Lease to the Buyer or its designee. Such Assumption and Assignment Agreements shall be in form and substance reasonably acceptable to the Seller and Buyer.

### ARTICLE 4. REPRESENTATIONS AND WARRANTIES

Section 1.    Representations and Warranties of Seller. Seller represents and warrants to Buyer as follows:

(a)    Authorization and Validity. Seller has all power and authority to enter into this Agreement and, subject to the Bankruptcy Court's entry of the Sale Order, to carry out its obligations hereunder and thereunder. Subject to the Bankruptcy Court's entry of the Sale Order, the execution and delivery of this Agreement and the performance of the obligations hereunder have been duly authorized by all necessary corporate action of Seller, and no other action on the part of Seller is necessary to authorize such execution, delivery and performance. This Agreement has been duly executed by Seller and, subject to Bankruptcy Court approval, constitutes Seller's valid and binding obligations, enforceable against Seller in accordance with the terms hereof.

Section 2.    Representations and Warranties of Buyer. Buyer hereby represents and warrants to Seller as follows:

(a)    Corporate Organization. Buyer is a corporation duly organized under the laws of the state of New Jersey, validly existing and in good standing under the laws of the jurisdiction of its incorporation, and has all requisite power and authority to own its properties and assets.

(b)    Authorization and Validity of Agreement. Buyer has all requisite power and authority to enter into this Agreement and to carry out its obligations hereunder. The execution and delivery of this Agreement and the performance of Buyer's obligations hereunder have been duly authorized by all necessary action by the board of directors (or equivalent) of Buyer, and no other action on the part of Buyer is necessary to authorize such execution, delivery and performance. This Agreement has been duly executed by Buyer and constitutes the valid and binding obligations of Buyer, enforceable against Buyer in accordance with its terms.

(c)    No Conflict or Violation. The execution, delivery and performance by Buyer of this Agreement does not and will not violate or conflict with any provision of the organizational documents of Buyer and does not and will not violate any provision of law, or any order applicable to Buyer, nor will it result in a breach of or constitute (with due notice or lapse of time or both) a default under any contract to which Buyer is a party or by which it is bound or to which any of its properties or assets is subject.

(d)    Consents and Approvals. The execution, delivery, and performance of this Agreement by Buyer does not and will not require the consent or approval of, or filing with, any government or any other person except (i) as may be required to be obtained by Buyer after the Closing in order to own or operate any of the Acquired Assets; (ii) entry of the Sale Order by the Bankruptcy Court; or (iii) for such consents, approvals and filings, of which the failure to obtain or make would not, individually or in the aggregate, have a Material Adverse Effect [define] on the ability of Buyer to consummate the transactions contemplated hereby.

(e)    Investigation by Buyer. Buyer has conducted its own independent review and analysis of the Acquired Assets. In entering into this Agreement, Buyer has relied upon its own investigation, and Buyer (i) acknowledges that neither the Seller, nor any of its representatives makes or has made any representation or warranty, either express or implied, as to the accuracy or completeness of any of the information provided or made available to Buyer or its Affiliates or Related Persons, except for the representations and warranties contained in this Agreement (which are subject to the limitations and restrictions contained in this Agreement); and (ii) agrees, to the fullest extent permitted by law, that none of Seller nor its representatives shall have any liability or responsibility whatsoever to Buyer or its Affiliates or Related Persons [define] on any basis (including, without limitation, in contract or tort, under federal or state securities laws or otherwise) based upon any information provided or made available, or statements made, to Buyer or its Affiliates or Related Persons (or any omissions therefrom), except for Seller's representations and warranties contained in this Agreement and, with respect to such representations and warranties, subject to the limitations and restrictions contained in this Agreement.

Section 3. <u>Warranties Exclusive</u>. The parties acknowledge that the representations and warranties contained in <u>Article 4</u> are the only representations or warranties given by the parties and that all other express or implied warranties are disclaimed except for the Seller's obligation to deliver the Acquired Assets, including the Scheduled Leases, free and clear of any liens, mortgages, pledges, charge, security interests, interests under conditional sale, capital lease or title retention agreements, encumbrances, easements, options, rights of first refusal, restrictions, judgments, claims, demands, successor liability, defects or other adverse claims, interests or liabilities of any kind or nature (whether known or unknown, accrued, absolute, contingent, or otherwise). Without limiting the foregoing, Buyer acknowledges that the Acquired Assets shall be conveyed "AS IS", "WHERE IS" and "WITH ALL FAULTS" and that ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ARE DISCLAIMED. WITHOUT LIMITING THE FOREGOING, BUYER ACKNOWLEDGES THAT NEITHER SELLER NOR ITS REPRESENTATIVES HAVE MADE ANY REPRESENTATION OR WARRANTY CONCERNING (I) ANY USE TO WHICH THE ACQUIRED ASSETS MAY BE PUT, (II) ANY FUTURE REVENUES, COSTS, EXPENDITURES, CASH FLOW, RESULTS OF OPERATIONS, FINANCIAL CONDITION OR PROSPECTS THAT MAY RESULT FROM THE OWNERSHIP, USE OR SALE OF THE ACQUIRED ASSETS, (III) ANY OTHER INFORMATION OR DOCUMENTS MADE AVAILABLE TO BUYER OR ITS AFFILIATES OR RELATED PERSONS, (IV) THE CONDITION OF THE ACQUIRED ASSETS INCLUDING, WITHOUT LIMITATION, COMPLIANCE WITH ANY FEDERAL OR OTHER LAWS, OR (V) THE LIKLIHOOD THAT THE SALE ORDER IN FORM ACCEPTABLE TO THE BUYER WILL BE ENTERED.

Section 4. <u>Survival of Representations and Warranties</u>. None of the representations or warranties of Seller or Buyer set forth in this Agreement or in any certificate delivered hereto shall survive the Closing. The parties hereto agree that the representations and warranties of Seller contained in this Agreement shall terminate upon the Closing or upon the earlier termination of this Agreement pursuant to <u>Article 8</u> and neither Seller nor Buyer shall have any liability for any breach thereof from and after such termination.

Section 5. <u>Existing Employees</u>. Buyer agrees that it shall interview existing employees of the Debtor promptly after execution of this Agreement and shall have the right, but not the obligation, to offer employment immediately after the Closing to any employee of the Seller on terms and conditions as determined by Buyer in its sole discretion.

### ARTICLE 5. COVENANTS AND OTHER AGREEMENTS

Section 1. <u>Covenants of Seller</u>

(a) <u>Approvals</u>. Seller shall use all commercially reasonable efforts to take, or cause to be taken, all actions, and to do, or cause to be done, all things necessary or proper, consistent with applicable law, to seek approval of the transactions contemplated hereby, subject to competitive bidding at an auction sale to be conducted pursuant to order of the Bankruptcy Court.

## ARTICLE 6. TAXES

Section 1.    Taxes Related to Purchase of Acquired Assets.  All state and local sales taxes applicable to the sale of the existing furniture, fixtures and equipment located in the store premises subject to the Scheduled Leases and transfer taxes related solely to the transfer of the Scheduled Leases, and all recording and filing fees (collectively, "Transaction Taxes") that may be imposed by reason of the sale, transfer, assignment, and delivery of the Acquired Assets shall be paid by Buyer to the extent not otherwise exempt under section 1146(a) of the Bankruptcy Code.  Transaction Taxes do not include any tax in the nature of an income tax, including, without limitation, any capital gains, franchise, or excise taxes.  Buyer and Seller agree to cooperate to minimize any such Transaction Taxes and to determine appropriate amount of Transaction Taxes, if any, payable in connection with the transactions contemplated under this Agreement.  Seller agrees to assist Buyer reasonably in the preparation and filing of any and all required returns for or with respect to such Transaction Taxes with any and all appropriate taxing authorities.

Section 2.    Cooperation on Tax Matters.

(a)    Buyer and Seller agree to furnish, or cause to be furnished to each other, (including the execution and delivery of appropriate powers of attorney) as promptly as practicable, such information and assistance relating to the Acquired Assets as is reasonably necessary for the preparation and filing of any Tax Return, claim for refund or other filings as required by law relating to tax matters, for the preparation for and proof of facts during any tax audit, for the preparation for any tax protest, for the prosecution or defense of any suit or other proceeding relating to tax matters and for the answer to any governmental or regulatory inquiry relating to tax matters.

Section 3.    Allocation of Purchase Price and Purchase Price Allocation Forms.  For tax purposes only, the parties agree to allocate the Purchase Price among the Acquired Assets (the "**Allocation**") in a mutually beneficial manner no later than one (1) business day prior to the Closing.  Seller and Buyer agree that the transaction will be treated principally as a lease acquisition for tax purposes.

## ARTICLE 7. CONDITIONS PRECEDENT TO PERFORMANCE BY PARTIES

Section 1.    Conditions Precedent to Performance by Seller.  The obligation of Seller to consummate the transactions contemplated by this Agreement is subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the condition contained in Article 7, Section 1(c)) may be waived by Seller in its sole discretion:

(a)    Representations and Warranties of Buyer.  All representations and warranties made by Buyer in Article 4 shall be accurate in all material respects on and as of the Closing Date as if again made by Buyer on and as of such date, except for inaccuracies that do not result in a material adverse effect on Buyer's ability to perform its obligations hereunder.

7

(b)     **Performance of the Obligations of Buyer.** Buyer shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date.

(c)     **Consents and Approvals.** The Bankruptcy Court shall have entered the Sale Order and no order staying, reversing, modifying, or amending the Sale Order shall be in effect on the Closing Date.

(d)     **No Violation of Orders.** No preliminary or permanent injunction or other order that declares this Agreement invalid or unenforceable in any respect or which prevents the consummation of the transactions contemplated hereby shall be in effect.

Section 2.     **Conditions Precedent to the Performance by Buyer.** The obligations of Buyer to consummate the transactions contemplated by this Agreement are subject to the fulfillment, at or before the Closing Date, of the following conditions, any one or more of which (other than the condition contained in Article 7, Section 2(c)) may be waived by Buyer in its sole discretion:

(a)     **Representations and Warranties of Seller.** All representations and warranties made by Seller in Article 4, Section 1 shall be accurate in all material respects on and as of the Closing Date as if again made by Seller on and as of such date, except for inaccuracies that do not result in a Material Adverse Effect.

(b)     **Performance of the Obligations of Seller.** Seller shall have performed in all material respects all obligations required under this Agreement to be performed by it on or before the Closing Date.

(c)     **Consents and Approvals.** The Bankruptcy Court shall have entered the Sale Order, in form and substance satisfactory to Buyer, and no order staying, reversing, modifying or amending the Sale Order shall be in effect on the Closing Date.

(d)     **No Violation of Orders.** No preliminary or permanent injunction or other order that declares this Agreement invalid in any respect or prevents the consummation of the transactions contemplated hereby shall be in effect.

### ARTICLE 8.  TERMINATION

Section 1.     **Termination.** This Agreement may be terminated at any time prior to the Closing Date by either Seller or Buyer as follows:

(a)     by either Seller or Buyer if the Closing shall not have occurred by 180 days from the date hereof (the "**Closing Deadline**");

(b)     by Seller if Buyer (x) is in material default and fails to cure same within seven (7) business days of receipt of a written notice by Seller to Buyer to cure, (y) is unwilling or unable to close by the Closing Deadline and fails to close within seven (7) business days of receipt of a written notice by Seller to Buyer to close, or (z) shall have materially breached any of its material representations, warranties, covenants, or agreements contained in this Agreement

8

which would give rise to the failure of a condition set forth in Article 7, which breach cannot be or has not been cured within seven (7) business days after the giving of written notice by Seller to Buyer specifying such breach in reasonable detail;

(c) by Buyer if Seller (x) is in material default, (y) is unable to close by the Closing Deadline, or (z) shall have breached any of its representations, warranties, covenants, or agreements contained in this Agreement which would give rise to the failure of a condition set forth in Article 7, which breach cannot be or has not been cured within seven (7) business days after the giving of written notice by Buyer to Seller specifying such breach in reasonable detail;

(d) by Buyer if the Bankruptcy Court fails to approve the assumption and assignment to Buyer of any Scheduled Lease; or

(e) by the mutual written consent of Seller and Buyer.

Section 2.   Effect of Termination.   In the event of termination of this Agreement as provided in Article 8, Section 1(a), (d) or (e), this Agreement shall forthwith become void and there shall be no liability on the part of either party other than for the return of the Deposit to Buyer. If this Agreement is terminated under Article 8, Section 1(b), Seller shall retain the Deposit as liquidated damages, which shall be Seller's sole remedy in the event of such termination by Seller. If the Agreement is terminated under Article 8, Section 1(c), Seller shall return the Deposit to Buyer and the return of the Deposit by Seller shall be Buyer's sole remedy in the event of such termination by Buyer; provided, however, that in the event of a willful failure by Seller to perform, in addition to the right to terminate, Buyer shall have the right to seek specific performance.

### ARTICLE 9. BANKRUPTCY COURT MATTERS

Section 1.   Sections 363(b) and (f) of the Bankruptcy Code.   The sale contemplated by this Agreement is to be made in accordance with the provisions of sections 363(b) and (f) and 365 of the Bankruptcy Code with the Acquired Assets being sold free and clear of any liens, mortgages, pledges, charge, security interests, interests under conditional sale, capital lease or title retention agreements, encumbrances, easements, options, rights of first refusal, restrictions, judgments, claims, demands, successor liability, defects or other adverse claims, interests or liabilities of any kind or nature (whether known or unknown, accrued, absolute, contingent, or otherwise)of all liens, claims, interests, and encumbrances of whatever kind or nature (the "**Interests**"), with such Interests, if any, to attach to the net proceeds of sale, excluding proceeds that are in the form of Cure Costs, which shall be paid to the landlord's under the Scheduled Leases.

Section 2.   Sale Order.   Buyer acknowledges that this Agreement and the closing of transactions contemplated herein are subject to entry of an order or orders approving this Agreement and authorizing the sale of the Acquired Assets, including assumption and assignment of the Scheduled Leases, free and clear of all Interests (the "**Sale Order**"). Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist Seller in obtaining entry of the Sale Order, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of

9

demonstrating that Buyer is a "good faith" purchaser under section 363(m) or any other section of the Bankruptcy Code, that landlords under the Scheduled Leases have adequate assurance of future performance by the Buyer or its designee, and that the Purchase Price was not controlled by an agreement in violation of section 363(n) or any other section of the Bankruptcy Code. The Sale Order proposed by Seller to the Bankruptcy Court shall provide that it shall be effective and enforceable immediately upon entry by the Bankruptcy Court notwithstanding rule 6004(d) of the Federal Rules of Bankruptcy Procedure and that the Buyer is a good faith purchaser under section 363(m) of the Bankruptcy Code. The Sale Order also shall provide that the Seller is authorized to assume and assign the Scheduled Leases to Buyer or its designee, such assumption and assignment is valid and enforceable, the landlords for the Scheduled Leases shall not assert defenses, rights of setoff, or counterclaims against Buyer or its designee based on facts arising prior to the Closing Date, and, subject to payment of the Cure Costs to the respective landlords under the Scheduled Leases, the Scheduled Leases shall be in full force and effect without default of any kind.

Section 3.   Expense Reimbursement Fee.   In consideration of being the stalking horse bidder for the purchase of the Acquired Assets, pursuant to the terms of this Agreement, Buyer shall be entitled to reimbursement of its expenses incurred in connection with the sale of the Acquired Assets, in an amount not to exceed THIRTY FIVE THOUSAND Dollars ($35,000.00) (the "Expense Reimbursement Fee") as set forth herein. Buyer shall receive the Expense Reimbursement Fee if the Seller closes on a transaction that results in the sale of the Acquired Assets to a buyer or buyers other than Buyer. The Expense Reimbursement Fee shall constitute an allowed administrative expense claim pursuant to section 503(b) of the Bankruptcy Code, and shall be payable to the Buyer at the closing from the proceeds of any alternative sale transaction(s).

Section 4.   Bid Procedures Order.   The Debtor shall obtain the entry of the Bid Procedures Order, which shall, among other things, authorize the Debtor to pay the Expense Reimbursement Fee in accordance with the terms of this Agreement and provide that the initial overbid of any Qualified Bidder (as defined in the Motion) bidding on the Acquired Assets shall be not less than $100,000 in excess of the Purchase Price for the Acquired Assets.

Section 5.   Highest and Best Bids   Buyer acknowledges that Seller is entertaining bids for the Acquired Assets and that a combination of such bids may be deemed by Seller to be the highest and otherwise best bids for the Acquired Assets. Seller agrees that it shall not designate any such bid as the highest or otherwise best bid for the Acquired Assets unless the aggregate consideration to be received by Seller, including the Cure Costs, exceeds the Purchase Price herein.

### ARTICLE 10. MISCELLANEOUS

Section 1.   Successors and Assigns.   Except as otherwise provided in this Agreement, no party hereto shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other party hereto, and any such attempted assignment without such prior written consent shall be void and of no force and effect. This Agreement shall inure to the benefit of and shall be binding upon the successors and permitted assigns of the parties hereto, specifically including, without limitation, the designated successor of Seller [?].

Section 2. <u>Governing Law; Jurisdiction</u>. This Agreement shall be construed, performed and enforced in accordance with, and governed by, the laws of the state of New York (without giving effect to the principles of conflicts of laws thereof), except to the extent that the laws of such state are superseded by federal law. The parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters or disputes arising under or in connection with the Agreement, and consent to the exclusive personal and subject matter jurisdiction of, the Bankruptcy Court.

Section 3. <u>Expenses</u>. Each of the parties hereto shall pay its own expenses in connection with this Agreement and the transactions contemplated hereby, including, without limitation, any legal and accounting fees, whether or not the transactions contemplated hereby are consummated, subject to <u>Article 9</u>. Buyer shall pay the cost of all fees, costs, and expenses associated with recording any assignment of the Acquired Assets.

Section 4. <u>Broker's and Finder's Fees</u>. Each of the parties represent and warrant that it has dealt with no broker or finder in connection with any of the transactions contemplated by this Agreement except Oberon Securities, LLC, to be retained by Seller pursuant to Court order and Seller shall pay any costs and expenses due to said broker.

Section 5. <u>Severability</u>. In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void, or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect only if, after excluding the portion deemed to be unenforceable, the remaining terms shall provide for the consummation of the transactions contemplated hereby in substantially the same manner as originally set forth at the later of the date this Agreement was executed or last amended.

Section 6. <u>Notices</u>.

(a) All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given: (i) on the date of service, if served personally on the party to whom notice is to be given; (ii) on the day of transmission, if sent via facsimile transmission to the facsimile number given below, and telephonic confirmation of receipt is obtained promptly after completion of transmission, if prior to 3:00 p.m. on a business day, and otherwise on the next Business Day[define]; (iii) on the Business Day after delivery to Federal Express or similar overnight courier or the Express Mail service maintained by the United States Postal Service providing for delivery on such Business Day and the procuring of a signed receipt; or (iv) on the fifth day after mailing, if mailed to the party to whom notice is to be given, by first class mail, registered or certified, postage prepaid and properly addressed, to the party as follows:

If to Seller:

Joyce Leslie, Inc.
170 West Commercial Avenue
Moonachie, New Jersey 07074
Attn: Lee Diercks

11

With a copy to:

    Kevin J. Nash, Esq.
    Goldberg Weprin Finkel Goldstein LLP
    1501 Broadway, 22nd Floor
    New York, New York 10036

If to Buyer:

    618 Main Street Corp.
    c/o MadRag
    5601 West Side Avenue
    North Bergen, New Jersey 07047
    Attn: Nathan Hoffman

With a copy to:

    Nancy L. Kourland, Esq.
    Rosen & Associates, P.C.
    747 Third Avenue
    New York, New York 10017

(b)    Any party may change its address for the purpose of this Article 10, Section 6 by giving the other party written notice of its new address in the manner set forth above.

Section 7.    Amendments; Waivers.    This Agreement may be amended or modified, and any of the terms, covenants, representations, warranties, or conditions hereof may be waived, only by a written instrument executed by the parties hereto, or in the case of a waiver, by the party waiving compliance. Any waiver by any party of any condition, or of the breach of any provision, term, covenant, representation or warranty contained in this Agreement, in any one or more instances, shall not be deemed to be or construed as a further or continuing waiver of any such condition, or of the breach of any other provision, term, covenant, representation or warranty of this Agreement.

Section 8.    Entire Agreement.    This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated hereby and supersedes and replaces all prior and contemporaneous agreements and understandings, oral or written, with regard to such transactions. All schedules hereto and any documents and instruments delivered pursuant to any provision hereof are expressly made a part of this Agreement as fully as though completely set forth herein.

Section 9.    No Third Party Beneficiaries.    Nothing in this Agreement is intended to or shall confer any rights or remedies under or by reason of this Agreement on any Persons other than Seller, Seller's designated successor[?], and Buyer and their respective successors and permitted assigns. Nothing in this Agreement is intended to or shall relieve or

discharge the obligations or liability of any third persons to Seller, Seller's designated successor or Buyer. This Agreement is not intended to nor shall it give any third Persons any right of subrogation or action over or against Seller or Buyer.

Section 10.    Headings, Interpretation, Gender.    Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine, or neuter, as the context requires. Whenever the words "include," "includes," or "including" are used in this Agreement, they shall be deemed followed by the words "without limitation." Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against Buyer or Seller, whether under any rule of construction or otherwise. No party to this Agreement shall be considered the draftsman. On the contrary, this Agreement has been reviewed, negotiated and accepted by all parties and their attorneys and shall be construed and interpreted according to the ordinary meaning of the words so as fairly to accomplish the purposes and intentions of all the parties. The captions and section headings contained in this Agreement are for convenience of reference only, do not form a part of this Agreement and shall not affect in any way the meaning or interpretation of this Agreement. All references in this Agreement to "Section" or "Article" shall be deemed to be references to a Section or Article of this Agreement. All references to "herein" or "hereof" or "hereunder" and similar phrases shall be broadly construed to refer to the entire Agreement and not merely to the specific clause, section, or article.

Section 11.    Counterparts.    This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument. Delivery of an executed counterpart to this Agreement by facsimile or .pdf shall have the same force and effect as delivery of an original executed counterpart of this Agreement.

Section 12.    Further Action.    Pending the Closing, the parties hereto shall use all reasonable efforts to take, or cause to be taken, all appropriate action, to do or cause to be done all things necessary, proper or advisable under applicable law as may be consistent with the terms of this Agreement, or required to carry out the provisions of this Agreement and consummate and make effective the transactions contemplated by this Agreement, including without limitation the transfer and assignment of the Select Assets.

### ARTICLE 11. DEFINITIONS

Section 1.    Certain Terms Defined.    As used in this Agreement, the following terms which are not otherwise defined above, shall have the following meanings:

"Affiliate" means, with respect to any Person, any Person directly or indirectly controlling, controlled by or under direct or indirect common control with such other Person.

"Business Day" means any day other than Saturday, Sunday, and any day that is a legal holiday or a day on which banking institutions in New York, New York are authorized by law or other governmental action to close.

"Material Adverse Effect" means a state of facts, event, change or effect that results in a material adverse effect on the value of the Select Assets or Designated Leases taken as a whole and considering the reasonable prospects of monetizing the full value of the Select

13

Assets, but excludes any state of facts, event, change or effect caused by events, changes or developments relating to (A) changes in economic, regulatory or political conditions generally; or (B) any hostilities, acts of war, military actions, sabotage or terrorism.

"Person" means any individual, corporation, partnership, joint venture, limited liability company, association, joint-stock company, trust, unincorporated organization, or government.

"Related Person" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, attorneys, accountants, investment bankers, or representatives of any such Person.

"Tax Return" means any report, return, information return, filing or other information, including any schedules, exhibits or attachments thereto, and any amendments to any of the foregoing required to be filed or maintained in connection with the calculation, determination, assessment, or collection of any taxes (including estimated taxes).

*[Signatures are on the following page.]*

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized as of the date first above written.

Joyce Leslie, Inc.

By: _____
Name: Lee Diercks
Title:   Chief Restructuring Officer

618 Main Street Corp.

By: _____
Name: Nathan Hoffman
Title:   Vice President

X:\GWFG\New Data\Yen\Word\Joyce Leslie\Select Asset Purchase Agreement 01-11-16 V4.Doc

15

# EXHIBIT "A"
## LEASES

**STORE NUMBERS**
Store #9;
Store #18;
Store #27;
Store #38;
Store #45;
Store #51;
Store #58;
Store #59;
Store #78;
Store #82;
Store #84;
Store #93;
Store #19;
Store #26;
Store #39;
Store #61;
Store #79;
Store #95;
Store #36; and
Store #33.

EXHIBIT "B"
CURE COSTS

|  | Store | Total Pre-Petition Rents |
|---|---|---|
| 13254 JEFFREY MANAGEMENT CORP. | #09 | $5,791.36 |
| 12713 GOLDBRUN REALTY LLC | #18 | $2,716.93 |
| 13147 AVR-PORTCHESTER, LLC. | #19 | $13,082.76 |
| 13874 HUTCH TARRYTOWN LLC | #26 | $14,852.97 |
| 12130 KR COLLEGETOWN LLC | #27 | $3,025.02 |
| 14264 GEORGETOWN CTR BROOKLYN | #33 | $35,076.35 |
| 14022 RPAI US MANAGEMENT LLC | #36 | $3,678.86 |
| 12327 BELGRADE & THOMPSONS | #38 | $6,261.38 |
| 13415 WINBROOK MANAGEMENT, LLC | #39 | $6,892.81 |
| 11919 AJG ENTERPRISES,LLC | #45 | $15,296.48 |
| 12401 GEWIRTZ ASSET PARTNERS | #51 | $4,624.11 |
| 12687 DELAWARE 1851 ASSOC.,LP | #58 | $24,482.99 |
| 13284 KIOP MEADOWBROOK,L.P. | #59 | $28,384.33 |
| 14079 TKMG ASSOCIATES, LP | #61 | $4,785.49 |
| 12800 NORTH HAVEN HOLDINGS,L.P. | #78 | $6,375.29 |
| 14091 RPAI US MANAGEMENT LLC | #79 | $37,418.43 |
| 04163 BERNICE JAMPOL | #82 | $83.47 |
| 11573 ALLEN ALEXANDER | #82 | $166.94 |
| 11574 JOAN KENNEDY | #82 | $166.94 |
| 11656 LESLIE BALIS | #82 | $83.47 |
| 12098 3724 MAIN ST. OWNERS,LLC | #82 | $4,441.94 |
| 12612 WOODROW BLUMENTHAL TRUST | #82 | $83.47 |
| 12847 LEDA BLUMENTHAL | #82 | $83.47 |
| 14118 CALDWELL TRUST CO AND | #82 | $83.47 |
| 14119 CASSIDY TURLEY, JPMORGAN | #82 | $83.47 |
| 14158 ESTATE OF LEE BRENNER | #82 | $166.94 |
| 05683 LEVCO ROUTE 46 ASSOC | #84 | $59,499.70 |
| 12436 MIDDLETOWN I RESOURCES LP | #93 | $6,318.66 |
| 12132 KRT PROP.HOLDINGS LLC | #95 | $4,778.28 |
|  | Total | $288,785.74 |