**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Joyce Leslie, Inc.,<br><br>Debtor. | Chapter 11<br><br>Case No. 16- 22035 (RDD) |

**DEBTOR'S AMENDED PLAN OF LIQUIDATION**

**INTRODUCTION**

Joyce Leslie, Inc. (the "Debtor") hereby proposes the following amended plan of liquidation (as amended from time to time, the "Plan") pursuant to Title 11 of the United States Code (the "Bankruptcy Code"). The Plan provides for the resolution, treatment and payment of the Allowed Claims against the Debtor following the completed liquidation sales of substantially all of the Debtor's operating assets previously authorized by the Bankruptcy Court under a series of orders entered on the following dates: (i) February 4, 2016 (ECF No. 121)(Approval of Revised Agency Agreement with Gordon Brothers Retail Partners; (ii) February 23, 2016 (ECF No. 172)(Approval of assignment of certain leases and sale of intellectual property to Rainbow Northeast Leases, Inc.); and (iii) February 29, 2016, March 1 and March 9, 2016 (ECF Nos. 182, 183, 190 and 209)(Approval of assignment of miscellaneous leases) (items no. (i), (ii), and (iii) are collectively referred to as the "Sale Orders"). The Plan is the mechanism to distribute the net sale and liquidation proceeds (after payment of Allowed Administrative Claims and Allowed Priority Claims) to holders of Allowed General Unsecured Claims on a *pro rata* basis following a Claims reconciliation process.

For a discussion of the Debtor's history, business, this chapter 11 case, and a summary and analysis of the Plan, creditors and shareholders of the Debtor should consult the Disclosure Statement filed with the Bankruptcy Court to which the Plan is attached. ALL CLAIMHOLDERS AND EQUITY INTERESTHOLDERS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

The Plan provides distributions only to Claimholders who hold Allowed Claims as of the Record Date. The Plan does not provide for a distribution to holders of Equity Interests, and their votes are not being solicited. Under section 1125(b) of the Bankruptcy Code, a vote to accept or reject the Plan cannot be solicited from holders of Claims until such time as the Disclosure Statement has been approved by the Bankruptcy Court and distributed to holders of Claims.

The Debtor expressly reserve its right to alter, amend or modify the Plan, one or more times, before its substantial consummation, subject to the consent of the Creditors' Committee

1

and the restrictions on modification set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and otherwise set forth in this Plan.

NO SOLICITATION MATERIALS, OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH AND APPROVED BY THE BANKRUPTCY COURT, HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT FOR USE IN SOLICITING ACCEPTANCE OR REJECTION OF THE PLAN.

THE PLAN HAS THE SUPPORT OF THE CREDITORS' COMMITTEE.

## Article I

## DEFINED TERMS

1.1    **Definitions of Terms Utilized in the Plan**

Unless the context otherwise requires or a term is defined within the Plan itself, the following terms shall have the respective meanings set forth below, except as expressly provided otherwise. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

1.1.1    **503(b)(9) Claims:** A Claim for the value of any goods received by the Debtor within 20 days of the Petition Date in which the goods have been sold to the Debtor in the ordinary course of the Debtor's business, that has been filed prior to the Bar Date under section 503(b)(9) of the Bankruptcy Code and that is granted administrative expense priority treatment.

1.1.2    **Additional Recoveries:** All proceeds of the liquidation of the Debtor's assets held or received by the Debtor other than cash on hand as of the Effective Date.

1.1.3    **Administrative Claim:** Any cost or expense of administration of the bankruptcy case allowed pursuant to section 503(b) of the Bankruptcy Code, including Professional Fee Claims, U.S. Trustee Fees, and timely filed 503(b)(9) Claims and any valid and allowed reclamation claims..

1.1.4    **Allowed Claim:** Any Claim (a) for which a Proof of Claim was timely filed with the Bankruptcy Court or the Claims Agent by the Bar Date; or (b) that is listed in the Schedules and not listed as disputed, contingent or unliquidated as to amount; and, in either case, as to which no objection to the allowance thereof has been filed by the Claim Objection Deadline, as such deadline may be extended.

1.1.5    **Avoidance Actions:** Any and all causes of actions, claims, and rights of the Debtor and its estate to avoid or recover a transfer of property of the Debtor's estate or an interest of the Debtor's property, including, without limitation, actions arising under sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code.

2

1.1.6       **Bankruptcy Court:**   The United States Bankruptcy Court for the Southern District of New York.

1.1.7       **Bankruptcy Rules:**  The Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York.

1.1.8       **Bar Date:**  May 31, 2016.

1.1.9       **Causes of Action:**  Without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, claims and demands whatsoever, whether known or unknown, in law, equity or otherwise.

1.1.10      **Claim:**  A claim, as defined in section 101(5) of the Bankruptcy Code, against the Debtor whether or not asserted or Allowed.

1.1.11      **Claimholder:** A holder of a Claim.

1.1.12      **Claim Objection Deadline:**  The date that is (a) one hundred and eighty (180) days after the Effective Date of the Plan, or (b) such other period of limitation as may be fixed by an order of the Bankruptcy Court for objecting to Claims.

1.1.13      **Claims Agent:**  Rust Consulting / Omni Bankruptcy.

1.1.14      **Class:**  A category of Claims or Equity Interests designated pursuant to the Plan.

1.1.15      **Confirmation Date:** The date upon which the Confirmation Order is entered by the Bankruptcy Court.

1.1.16      **Confirmation Hearing:**  The hearing held by the Bankruptcy Court to consider approval and confirmation of the Plan.

1.1.17      **Confirmation Order:**  The Order of the Bankruptcy Court confirming and approving the Plan.

1.1.18      **Creditor:**  The holder of a Claim against the Debtor.

1.1.19      **Creditors' Committee:**  The official committee of unsecured creditors of the Debtor appointed by the United States Trustee on January 22, 2016 [ECF No. 70].

1.1.20      **Disclosure Statement**:   The Debtor's approved disclosure statement relating to the Plan, as it may be amended from time to time.

1.1.21      **Disputed Claim:**  Any Claim, (i) proof of which has been filed and to which an objection to the allowance thereof has been filed before the Claim Objection Deadline and such objection has not been either (a) determined by a Final Order or (b) settled by the parties under a settlement approved by Bankruptcy Court pursuant to

3

Bankruptcy Rule 9019; or (ii) which has not been otherwise Allowed by the Bankruptcy Court.

1.1.22    **Effective Date:**    The first business day after the Confirmation Order becomes a Final Order.

1.1.23    **Equity Interest:**    The stock of the Debtor held by Joyce Gewirtz Segal and Nancy Shapiro.

1.1.24    **Exhibit:** An exhibit annexed to the Plan or Disclosure Statement.

1.1.25    **Final Decree:**    The Order entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022 closing the bankruptcy case.

1.1.26    **Final Order:**    An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or resulted in no modification of such order.

1.1.27    **General Unsecured Claim:**    Any Claim against the Debtor which is not an Administrative Claim or a Priority Claim.

1.1.28    **Net Distributable Cash**:    All remaining funds on hand generated from all sources, which shall be used for payment of (a) all Allowed Administrative Claims, (b) all Allowed Priority Claims, (c) a pro rata distribution to holders of Allowed General Unsecured Claims, and (d) to establish related reserves for post-confirmation expenses and Disputed Claims.

1.1.29    **Order:**    An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction.

1.1.30    **Person:**    An individual, limited liability company, corporation, partnership, association, trust or unincorporated organization, joint venture or other person or a government or any agency or political subdivision thereof.

1.1.31    **Petition Date:**    January 9, 2016, the date on which the Debtor filed its petition for relief in the Bankruptcy Court.

1.1.32    **Plan Administrator**:    Lee Diercks or his successor.

1.1.33    **Priority Claims**:    Collectively, the Priority Tax Claims and the Priority Non-Tax Claims.

1.1.34  **Priority Non-Tax Claim:**  A Claim that is entitled to priority under section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Priority Tax Claim, including, primarily, Allowed Claims of employees for unpaid wages, severance and vacation pay entitled to priority status pursuant to section 507(a)(4) of the Bankruptcy Code.

1.1.35  **Priority Non-Tax Claim Inclusions:**  For the purposes of efficiency, any creditor who filed a timely priority vacation claim, but who inadvertently mischaracterized himself or herself as the holder of a general unsecured claim on his or her proof of claim will be treated for purposes of the Plan, and deemed to have filed, a priority wage claim without the necessity of a formal motion.  Such creditors are listed on Exhibit "B" to the Disclosure Statement.  Additionally, the category of Priority Non-Tax Claim Inclusions also includes timely filed claims for gift cards and layaways whether or not they were characterized as priority claims on their actual proofs of claim.  A schedule of the deemed priority gift card and layaway claims are listed on Exhibit "C" to the Disclosure Statement.

1.1.36  **Priority Tax Claim:**  A Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.1.37  **Professional:**  Any professional employed pursuant to section 327, 328 or 1103 of the Bankruptcy Code or any professional or other Person seeking compensation or reimbursement of expenses pursuant to section 503(b)(4) of the Bankruptcy Code.

1.1.38  **Professional Fee Claim:**  A Claim of a Professional under section 328, 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and/or reimbursement of expenses.

1.1.39  **Professional Fee Claim Bar Date:** Forty-five (45) days after the Effective Date.

1.1.40  **Retained Professional** means those Persons retained pursuant to an order of the Bankruptcy Court in accordance with Sections 327, 328, 363 or 1103 of the Bankruptcy Code.

1.1.41  **U.S. Trustee Fees**:  Any cost or expense relating to services incurred by the United States Trustee during the pendency of this case.

1.2  **Rules of Interpretation: Application of Definitions, Rules of Construction and Computation of Time**

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter.  For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially in that form or substantially on those terms and

5

conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; (c) unless otherwise specified, all references in the Plan to Sections, Schedules, and Exhibits are references to sections, schedules, and exhibits of or to the Plan. Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. The rules of construction contained in Bankruptcy Code section 102 shall apply to the construction of the Plan. The headings in the Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Plan. Unless otherwise indicated herein, all references to dollars are to United States dollars. Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## Article II

### CLASSIFICATION AND PROVISIONS FOR TREATMENT OF CLAIMS AND EQUITY INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims and unclassified Claims against the Debtor. A Claim is placed in a particular Class for the purposes of voting on the Plan and receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified.

2.1   **Non-Classified Claims**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and their treatment is set forth in Section 2.1 hereof.

    2.1.1   **Administrative Claims.** Each holder of an Allowed Administrative Claim (other than Professional Fee Claims and U.S. Trustee Fees) shall receive, in full satisfaction, settlement and release of such Allowed Administrative Claim, a cash payment equal to such Allowed Administrative Claim, (i) as soon as reasonably practicable after the Effective Date or (ii) if the Administrative Claim is not Allowed as of the Effective Date, within thirty (30) days after the date on which such Administrative Claim becomes an Allowed Administrative Claim or as soon thereafter as reasonably practicable.

    The last date for the filing any Proof of Claim for an Administrative Claim (other than Professional Fee Claims) was May 31, 2016. Objections to Administrative Claims (other than Professional Fee Claims), must be filed and served on the requesting party by no later than the Claim Objection Deadline. Unless the Debtor, or another party in interest objects to a Proof of Claim for such Administrative Claim within such time period, such Administrative Claim shall be deemed Allowed in the amount asserted. In the event that the Debtor or another party in interest objects to a

6

Proof of Claim for such Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

2.1.2    **Priority Tax Claims.**  Each holder of an Allowed Priority Tax Claim, shall receive, in full satisfaction, settlement and release of such Allowed Priority Tax Claim, a cash payment equal to such Allowed Priority Tax Claim, (i) as soon as reasonably practicable after the Effective Date; or (ii) if the Priority Tax Claim is not Allowed as of the Effective Date, within thirty (30) days after the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim or as soon thereafter as reasonably practicable.  All Priority Tax Claims shall be paid from Net Distributable Cash.

2.1.3    **Professional Fee Claims**.  All final requests for payment of Professional Fee Claims must be filed on or before the Professional Fee Claim Bar Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior orders of the Bankruptcy Court, the Allowed amounts of such Professional Claims shall be determined by the Bankruptcy Court, and the balance due thereon shall thereafter be immediately paid in full in cash.  Notwithstanding anything herein to the contrary, all Professional Fee Claims remain subject to approval by the Bankruptcy Court in accordance with sections 330 and 331 of Bankruptcy Code following the filing of a fee application and notice thereof.

Any requirement that Professionals comply with the Professional Fee Order or sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after the Effective Date shall terminate on the Effective Date.

2.1.4    **U.S. Trustee Fees**.  The Debtor shall pay all outstanding U.S. Trustee Fees on an ongoing basis until the date a Final Decree is entered closing the bankruptcy case, or the bankruptcy case is converted or dismissed, or the Bankruptcy Court orders otherwise.

2.2    **Classification and Treatment of Classified Claims and Equity Interests**

The following table designates the Classes of Claims and Interests and specifies which Classes are: (i) impaired or unimpaired by this Plan; (ii) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code; and (iii) deemed to accept or reject this Plan.

| Summary of Classification and Treatment of Timely Filed Claims and Equity Interests | | | |
|---|---|---|---|
| Class | Claim | Status | Voting Rights |
| I | Priority Non-Tax Claims and Priority Non-Tax Inclusions | Unimpaired | Deemed to Accept |
| II | General Unsecured Claims | Impaired | Entitled to Vote |
| III | Equity Interests | Impaired | Deemed to Reject |

A Claim or Equity Interest is placed in a particular Class only to the extent that such Claim or Equity Interest is Allowed and has not been paid, released or otherwise settled prior to the Effective Date. Notwithstanding any distribution provided for in the Plan, no distribution on account of any Claim is required or permitted unless and until such Claim becomes an Allowed Claim, which might not occur, if at all, until after the Effective Date.

2.2.1    **Class I (Priority Non-Tax Claims and Priority Non-Tax Inclusions).** Except to the extent that a holder of an Allowed Priority Non-Tax Claim has been paid prior to the Effective Date or has previously agreed or agrees to a different treatment by stipulation or order, each holder of an Allowed Priority Non-Tax Claim (including filed and allowed unsecured claims for wages, salaries, accrued vacation or severance accruing prior to 180 days prior to the Petition Date and not to exceed $12,475 per person) and the Priority Non-Tax Inclusion as listed on Exhibits "B" and "C" to the Disclosure Statement, shall receive, in full and complete satisfaction, settlement and release of and in exchange for such holder's claims against the Debtor, a cash payment equal to such Allowed Priority Non-Tax Claim or Priority Non-Tax Inclusion from the Net Distributable Cash (i) as soon as reasonably practicable after the Effective Date or (ii) to the extent such Priority Non-Tax Claim is not an Allowed Claim on the Effective Date, within ten (10) days following allowance of such Claim pursuant to Final Order, or as soon thereafter as reasonably practicable.

2.2.2    **Class II (Allowed General Unsecured Claims).** Each holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement and release of such holder's Allowed General Unsecured Claim, a *pro rata* payment computed and calculated from the remaining Net Distributable Cash (after payment of Administrative Claims and Priority Claims). The *pro rata* payment to Class II Allowed General Unsecured Claims shall be made as soon as reasonably practical after the Effective Date following resolution of objections to various Disputed Claims. The *pro rata* payment is measured by the remaining Net Distributable Cash (after payment and satisfaction of Administrative and Priority Claims and creation of reserves) divided by the total amount of Allowed General Unsecured Claims.

2.2.3    **Class VII (Equity Interests).** The shareholders of the Debtor will retain no ownership interests in the Debtor under the Plan and, on the Effective Date, all Equity Interests shall be cancelled and extinguished without distribution.

2.3 **Pension Plans and Claims of Pension Benefit Guaranty Corporation and National Retirement Fund**

The Debtor, sponsor of the Joyce Leslie, Inc. Defined Benefit Plan (the "Pension Plan"), as defined in 29 U.S.C. § 1301(a)(13), has initiated and hopes to complete a standard termination of the Pension Plan in accordance with 29 U.S.C. §§ 1341(a) and (b), and the regulations thereunder, ("Standard Termination") including compliance with any Pension Benefit Guaranty Corporation ("PBGC") audit under 29 U.S.C. § 1303(a).

8

PBGC has filed three contingent claims (the "PBGC Claims") against the Debtor in the total amount of $3,189, 254. The PBGC Claims are based on the contingency that the Pension Plan will terminate under 29 U.S.C. §§ 1341(c) or 1342. The Debtor has initiated and intends to complete the Standard Termination in satisfaction of all Pension Plan liabilities as part of the Plan process. In conjunction with the Pension Plan's standard termination, PBGC has reserved its rights as to any outstanding premiums owed to PBGC. Additionally, if, for any reason, the Debtor is unable to complete the Standard Termination, the PBGC Claims shall be treated as General Unsecured Claims pursuant to Section 2.2.2 hereof without prejudice to the Debtor's right to object to the specific amount of the PBCG Claims if any.

In addition, the National Retirement Fund ("NRF") filed a claim in the amount of $3,167,721, asserting withdrawal liability under ERISA. NRF is the union pension plan for Local 340A NY-NJ Joint Board covering many of the Debtor's warehouse and store employees. NRF filed a claim for withdrawal liability after the Debtor closed its stores and terminated the majority of its employees.

2.4    **No Release of ERISA Obligations**

Notwithstanding any provision of this Plan or the Confirmation Order to the contrary, neither the Plan nor the Confirmation Order shall release any Person from their duties and obligations under the Employee Retirement Security Act ("ERISA") of 1974, as amended; or release any Person with respect to controlled group liability owed to the Pension Plan, the PBGC, or the NRF; or release any Person from fiduciary breach related to the Pension Plan or the NRF; or enjoin or prevent the PBGC, the Pension Plan or the NRF from collecting such liability from a liable party.

## Article III

### IMPLEMENTATION AND EXECUTION OF THE PLAN

3.1    **Effective Date.**

The Plan shall become effective on the Effective Date.

3.2    **The Plan Administrator.**

    3.2.1    <u>Transfers of Assets</u>. On the Effective Date, the Debtor shall transfer, or cause to be transferred, all remaining Net Distributable Cash to the Plan Administrator. Such transfers shall be free and clear of all liens, claims, interests, rights of offset and encumbrances, other than a Creditor's right to receive a distribution pursuant to the Plan.

    3.2.2    <u>Authority and Role of the Plan Administrator</u>. In furtherance of and consistent with the purposes of the Plan, the Plan Administrator shall be deemed the representative of the Debtor's estate on a post-confirmation basis. The Plan Administrator shall have full authority to act on behalf of the Debtor, the Reorganized Debtor or Debtor's bankruptcy estate, as the case may be. The powers and duties of the Plan Administrator shall consist of, *inter alia*, the following:

a. To take control of, preserve and convert to cash any remaining property of the Debtor's estate subject to the terms of the Plan;

b. To prosecute or abandon all Causes of Action belonging to or which could be asserted by the Debtor, except as otherwise provided in Section 3.3 of the Plan;

c. To object to any remaining Claims;

d. To abandon, discontinue, dismiss, amend, settle, compromise, negotiate or otherwise resolve all disputes and Claims, including all Causes of Action, except as otherwise provided in the Plan;

e. To maintain existing professionals to assist in implementing the Plan;

f. To enter into contracts as necessary to assist in carrying out the powers and duties enumerated in the Plan;

g. To hire employees and/or terminate current employees of the Debtor;

h. To the extent the Plan Administrator deems necessary, to take all necessary actions to assure that the corporate existence of the Debtor remains in good standing until entry of a final decree closing the bankruptcy case;

i. To open and maintain bank accounts and deposit funds and draw checks;

j. To effectuate any of the provisions of the Plan; and

k. At the appropriate time, to ask the Bankruptcy Court to enter a final decree.

3.2.3    Compensation of the Plan Administrator.  The Plan Administrator shall be entitled to reasonable compensation in an amount consistent with that of similar professionals in similar types of bankruptcy proceedings, to be determined in consultation with the Debtor and the Creditors' Committee. The costs and expenses of the Plan Administrator shall be paid from Net Distributable Cash. The Plan Administrator (in consultation with the Creditors' Committee) shall maintain appropriate reserves to fund post-confirmation administrative expenses in connection with the implementation of the Plan.

3.2.4    Successor.  If Lee Diercks does not or cannot serve as Plan Administrator for any reason, then Lee Diercks shall be succeeded as Plan Administrator by Pat Diercks. If Pat Diercks is unable to serve as Plan Administrator for any reason, then a substitute Plan Administrator shall be appointed by Order of the Bankruptcy Court.

3.3    **No Pursuit of Avoidance Actions**

The Debtor's estate does not intend to bring or commence any Avoidance Actions, either prior to or after the Effective Date. In consultation with the Creditors' Committee, the Debtor's review of the pre-petition transactions has not revealed any meaningful Avoidance Actions to be

pursued which would increase the Debtor's estate on a net basis after factoring in the costs and expenses of litigation.

3.4     **Delivery of Distributions.**

Any distribution shall be made to the holders of Allowed Claims: (i) at the address set forth on the Proof of Claim Filed by such holder, or (ii) at the addresses reflected in the Schedules if neither a Proof of Claim nor a written notice of change of address has been filed.

If a distribution to any Creditor is returned as undeliverable without a forwarding address, no further distributions to such Creditor shall be made unless and until the Plan Administrator is notified of such Creditor's then-current address, at which time the distribution shall be made to such Creditor. All claims for undeliverable Distributions shall be made on or before the 180th day after the first distributions under the Plan. All unclaimed dividends by a Creditor shall revert to the Debtor's estate, to be re-distributed in a subsequent *pro rata* distribution to holders of Allowed General Unsecured Claims as practical and reasonable under the circumstances.

3.5     **W-9 Forms from Holders of Claims.**

The Plan Administrator shall issue W-9 Forms to all creditors entitled to distribution to either (i) their last known addresses per the records obtained by the Plan Administrator from the Debtor or (ii) forwarding addresses provided by the United States Postal Service or by creditors themselves. Creditors failing to return completed W-9 Forms to the Plan Administrator within 30 days of the Plan Administrator's request for a completed W-9 Form (or within any further time period expressly agreed to in writing between the Plan Administrator and such Creditor), shall not share in any distribution provided for under the Plan.

3.6     **No Interest on Claims.**

Unless otherwise specifically provided for in the Plan or Confirmation Order, or as required by section 506 of the Bankruptcy Code, post-Petition Date interest shall not accrue or be paid on Claims, and no Claimholder shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

3.7     **Minimum Distribution.**

Notwithstanding anything in the Plan to the contrary, the Plan Administrator will not be required to make distributions of cash less than $25.00 in value.

3.8     **Manner of Payment Under the Plan.**

The cash distributions made pursuant to this Plan shall be made in U.S. dollars by checks drawn on domestic banks selected by the Plan Administrator, as applicable, or by wire transfer from a domestic bank selected at the option of the Plan Administrator.

3.9     **Procedures for Treating and Resolving Disputed Claims.**

No payments or distributions will be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order, and the Disputed Claim has become an Allowed Claim.

    3.9.1   **Distribution Reserve**.  The Plan Administrator will establish a reserve of up to $125,000 (the "Disputed Claim Reserve") from the funds to be distributed under the Plan to deal with Disputed Claims that remained unresolved as of the Effective Date.  The Disputed Claim Reserve shall be a separate fund established to pay Disputed Claims that may be allowed in amounts exceeding the Debtor's projections.  The Plan Administrator may also request estimation of any Disputed Claim that is contingent or unliquidated as part of the process of establishing a Distribution Reserve.

    3.9.2   **Distributions After Allowance**.  Payments and distributions from the Disputed Claims Reserve on account of a Disputed Claim, to the extent that such Disputed Claim ultimately becomes an Allowed Claim beyond the Debtor's projections, will be made in accordance with provisions of the Plan. Promptly after the date when the Order or judgment of the Bankruptcy Court allowing all or part of such Claim becomes a Final Order, the Plan Administrator shall distribute to the holder of such claim its *pro rata* distribution allocated to such Disputed Claim.  Any unused portion of the Disputed Claim Reserve shall become part of the Net Distributable Cash for distribution to other Creditors.

3.10    **Dissolution of the Debtor.**

As soon as is reasonably practicable following entity of the Final Decree, the Plan Administrator shall be authorized to take all actions necessary to effect the dissolution of the Debtor without the need for any further Bankruptcy Court action or approval.

3.11    **Objections to Claims.**

Any objection to the allowance of a Claim not filed by the Claim Objection Deadline shall be deemed waived, and the Claim shall be an Allowed Claim in the amount set forth on the Proof of Claim filed by the holder of such Claim. Subject to the provisions above, the Plan Administrator, in its discretion, may make distributions to the holders of Allowed Claims within any particular Class of Creditors before all Disputed Claims within that particular Class become Allowed or disallowed in full or in part.

3.12    **Term of Injunctions or Stays.**

All injunctions or stays pursuant to section 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the close of the bankruptcy case. Except as otherwise expressly provided in the Plan or to the extent necessary to enforce the terms and conditions of the Plan, all Creditors who have held, hold, or may hold Claims against in the Debtor, are permanently enjoined, on and after the Confirmation Date, from (i) commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment,

12

award, decree or Order against the Debtor, on account of any such Claim; (iii) creating, perfecting or enforcing any encumbrance of any kind against the Debtor; and (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor, or against the property or interests in property of the Debtor, except to the extent such right is asserted in connection with a timely filed proof of claim or real property lease.

3.13  **Transfer Taxes.**

Any transfer of the Net Distributable Cash to the Plan Administrator pursuant to the Plan shall constitute a "transfer under a plan" within the purview of section 1146(c) of the Bankruptcy Code and shall not be subject to transfer, stamp or similar taxes.

### Article IV

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

4.1  **Background.**

The Debtor believes that all executory contracts and unexpired leases were assumed or assigned, or rejected during the pendency of the bankruptcy case. However, this Article IV is included out of an abundance of caution.

4.2  **Executory Contracts and Unexpired Leases.**

Any pre-petition executory contracts or unexpired leases which have not been assumed and assigned, or rejected, prior to the Confirmation Date shall be deemed rejected as of the Effective Date. Any Creditor asserting a claim for monetary damages as a result of the rejection of an executory contract pursuant to the Confirmation Order shall file a Proof of Claim substantially in the form of Official Form 410 with the Claims Agent (a "**Rejection Claim**"), and serve it upon Debtor's counsel by overnight mail within thirty (30) days following the Effective Date. Nothing herein shall be deemed to extend any Bar Date applicable to a previously rejected executory contract or unexpired lease.

4.3  **Rejection Claims.**

If a Rejection Claim is not timely filed pursuant to Section 4.2 of the Plan, such Claim, if any, shall be forever disallowed and barred. If one or more Rejection Claims are filed pursuant to Section 4.2 of the Plan, the Debtor and/or the Plan Administrator may file one or more objections to any Rejection Claims, and serve it upon the Claimant and the Claimant's counsel, if any, by overnight mail by the Claim Objection Deadline. If a Rejection Claim becomes Allowed, in full or in part, such Claim shall be a Class II General Unsecured Claim to the extent such Claim becomes Allowed and thereby eligible for a distribution hereunder.

4.4  **Benefit Plans.**

The Joyce Leslie Inc. Defined Benefit Plan has been terminated.

## Article V

### CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

5.1 **Condition to Confirmation.**

The sole condition to confirmation shall be entry of a Confirmation Order by the Bankruptcy Court in form and substance reasonably satisfactory to the Debtor and the Creditors' Committee.

5.2 **Conditions to Effective Date.**

The conditions to the occurrence of the Effective Date shall be that (i) there shall be no stay in effect with respect to the Confirmation Order; and (ii) the Confirmation Order shall be a Final Order, which conditions may be waived jointly by the Debtor and the Creditors' Committee.

## Article VI

### ACCEPTANCE OR REJECTION OF THE PLAN; EFFECT OF REJECTION BY ONE OR MORE IMPAIRED CLASSES OF CLAIMS OR EQUITY INTERESTS

6.1 **Impaired Class of Claims Entitled to Vote.**

Claimholders in the impaired Class of Claims are entitled to vote as a Class to accept or reject the Plan, except to the extent such Class is deemed to reject the Plan. The Debtor will tabulate votes on the Plan.

6.2 **Acceptance by an Impaired Class.**

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

6.3 **Presumed Acceptances by Unimpaired Classes.**

Class 1 Priority Non-Tax Claims are unimpaired by the Plan. Under section 1126(f) of the Bankruptcy Code, such Claimholders are conclusively presumed to accept the Plan, and the votes of such Claimholders will not be solicited.

6.4 **Class Deemed to Reject.**

Class 3 Equity Interests are impaired by virtue of the Debtor's estimate that the holders of Equity Interests will not receive any distribution. Accordingly, Class 3 is conclusively presumed

14

to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, and the votes of holders of Equity Interests will not be solicited.

6.5     **Non-Consensual Confirmation.**

In the event that Class 2 General Unsecured Claims do not vote to accept the Plan, the Debtor will seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

6.6     **Confirmation and Severability of the Plan.**

The confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied. A determination by the Bankruptcy Court that the Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Debtor's ability to modify the Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code.

## Article VII

## MISCELLANEOUS PROVISIONS

7.1     **Binding Effect of the Plan.**

The provisions of the Plan shall be binding upon all parties and inure to the benefit of the Debtor's estate and its predecessors, successors, assigns, agents, officers and directors. The terms of the Plan shall be enforceable against the Debtor, its Creditors and all parties-in-interest.

7.2     **Corporate Action**.

Prior to, on and after the Effective Date, all matters provided for under the Plan that otherwise would require approval of the shareholders or directors of the Debtor shall be deemed to have occurred and shall be in effect prior to, on and after the Effective Date pursuant to the applicable general corporation law of New York without any requirement of further action by the shareholders or directors of the Debtor.

7.3     **Retention of Jurisdiction.**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under or related to the bankruptcy case for, among other things, the following purposes:

7.3.1     Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the priority, amount, or allowance of Claims;

7.3.2     Decide and resolve all matters related to the granting and denying, in whole or in part, of any Professional Fee Claims;

   7.3.3  Resolve any matters related to the assumption, assignment, or rejection of any executory contract or unexpired lease to which a Debtor is or was party and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an executory contract or unexpired lease, cure obligations pursuant to section 365 of the Bankruptcy Code, or any other matter related to such executory contract or unexpired lease;

   7.3.4  Ensure that distributions to holders of Allowed Claims are effectuated pursuant to the provisions of the Plan;

   7.3.5  Adjudicate any motions, adversary proceedings, applications or contested matters that may be pending on the Effective Date;

   7.3.6  Enter and implement such Orders as may be necessary or appropriate to execute, implement, enforce or consummate the provisions of the Plan.

   7.3.7  Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated herein;

   7.3.8  Consider any modifications of the Plan to cure any defect or omission, or to reconcile any inconsistency with the Confirmation Order;

   7.3.9  Determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

   7.3.10  Enter an Order concluding or closing the bankruptcy case.

7.4 **Headings.**

The headings of the sections and subparagraphs of the Plan are inserted for convenience only and shall not affect the interpretation of any provision of the Plan.

7.5 **Time.**

Whenever the time for the occurrence or happening of an event as set forth in this Plan falls on a day that is not a business day, then the time for the next occurrence or happening of said event shall be extended to the next day business.

7.6 **Severability.**

Should any provision of the Plan be determined to be unenforceable after the Effective Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all of the other provisions of the Plan.

7.7 **Confirmation Order Controls.**

In the event any provision of the Plan is inconsistent with the provisions Confirmation Order, the Confirmation Order shall control and take precedence.

7.8 **Statutory Fees.**

The Debtor shall pay all U.S. Trustee Fees which accrue prior to entry of the Final Decree.

7.9 **Creditors' Committee.**

From and after the Effective Date, the Creditors' Committee shall exist for the sole purposes of (a) participating in the Claims reconciliation, objection, negotiation and settlement process conducted by the Plan Administrator, (b) enforcing the terms of the Plan and payments on account of Allowed General Unsecured Claims, (c) addressing matters related to Professional Fee Claims, including filing such claims and, if appropriate, objecting to claims filed by Professionals, and (d) appearing before and being heard by the Bankruptcy Court and other courts of competent jurisdiction in connection with the above duties.  The Professionals employed by the Creditors' Committee shall be entitled to reasonable compensation, which shall be paid from Net Distributable Cash; provided, however, the Debtor shall no longer be responsible for paying any expenses incurred by members of the Creditors' Committee after the Effective Date.

7.10 **Claims Agent.**

Rust Consulting / Omni Bankruptcy, in its capacity as Claims Agent, shall be relieved of its duties by upon entry of the Final Decree and the Claims Agent shall continue to provide services to the Debtor's Estate, including assistance with issuance of distribution checks to Creditors.

7.11 **Modification of Plan.**

The Debtor reserves the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to entry of the Confirmation Order, in consultation with the Creditors' Committee.  After the entry of the Confirmation Order, the Debtor may, upon Order of the Bankruptcy Court, amend or modify the Plan in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission, or reconcile any inconsistency in the Plan, in such manner as may be necessary to carry out the purpose and intent of the Plan.

7.12 **Revocation, Withdrawal or Non-Consummation Right to Revoke or Withdraw.**

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date so long as the Debtor obtains the consent of the Creditors' Committee for such revocation or withdrawal.

    7.13    **Notices.**

Pursuant to Bankruptcy Rule 2002 and any applicable local Bankruptcy Rules, notice of all post-confirmation matters for which notice is required to be given shall be deemed sufficient if served upon the U.S. Trustee's Office, counsel to the Debtor, counsel to the Creditors' Committee and the Plan Administrator and all persons on the Debtor's Bankruptcy Rule 2002 service list. With the exception of the Debtor, the Plan Administrator and the Creditors' Committee, and the United States Trustee, any person desiring to remain on the Debtor's Bankruptcy Rule 2002 service list shall be required to file a request for continued service and to serve such request upon counsel to the Plan Administrator and the Debtor within thirty (30) days subsequent to the Effective Date. Persons shall be notified of such continued notice requirements in the notice of entry of the Confirmation Order. Persons who do not file a request for continued service shall be removed from the Bankruptcy Rule 2002 service list. Any notice required or permitted to be provided to the Debtor, the Creditors' Committee or the Plan Administrator under the Plan shall be in writing and served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, or (d) electronic mail, to be addressed as follows:

    If to the Debtor or the Plan Administrator:

    Kevin Nash, Esq.
    J. Ted Donovan, Esq.
    Goldberg Weprin Finkel Goldstein LLP
    1501 Broadway, 22nd Floor
    New York, NY 10036
    knash@gwfglaw.com
    tdonovan@gwfglaw.com

    If to the Creditors' Committee:

    Jay R. Indyke, Esq.
    Seth Van Aalten, Esq.
    Cooley LLP
    1114 Avenue of the Americas
    New York, NY 10036
    jindyke@cooley.com
    svanaalten@cooley.com

7.14    **Substantial Consummation**.

The Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code on the first date that distributions are made in accordance with the terms of this Plan to any Claimholders.

Dated: New York, New York
       December 28, 2016

                                   Goldberg Weprin Finkel Goldstein LLP
                                   Attorneys for the Debtor
                                   1501 Broadway, 22nd Floor
                                   New York, New York 10036
                                   (212) 221-5700

                              By:    /s/ Kevin J. Nash, Esq.
                                      Kevin J. Nash, Esq.

                              Joyce Leslie, Inc.

                              By:    /s/ Lee Diercks
                                      Name:  Lee Diercks
                                      Title:   Chief Restructuring Officer